Latrobe Country Club *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant.

Argued May 6, 1976, before Judges Crumlish, Jr., Wilkinson, Jr. and Blatt, sitting as a panel of three.

Reargued May 3, 1977, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

J. Leonard Langan, Assistant Attorney General,
with him Harry Bowytz, Chief Counsel, and Robert
P. Kane, Attorney General, for appellant.

Bernard F. Scherer, with him Gene E. McDonald,
and Lightcap, McDonald & Moore, for appellee.

Opinion by Judge Crumlish, Jr., July 25, 1977:
The Pennsylvania Liquor Control Board (Board)
appeals an order of the court of common pleas which
sustained an appeal by the Latrobe Country Club
(Appellee) from a Board order refusing to extend
Appellee's license to a half-way house 1,000 feet from
the building for which the club license is presently is-
sued.
In support of its order denying the extension of
the club license to Appellee's other building, the Board
made but one finding of fact which states:

The proposed new area is not adjacent to or directly connected with the presently licensed premises.

On appeal, the court below relied upon Section 404 of the Liquor Code,[1] relating to *issuance* and *transfer* of hotel, restaurant and club liquor licenses and the discretion vested in the Board with respect to approval or disapproval of a license under this section. The section states:

Upon receipt of the application, the proper fee and bond, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a hotel, restaurant or club, as defined in this act, and that the issuance of such license is not prohibited by any of the provisions of this act, the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club may, in its discretion, issue or refuse a license: Provided, however, That in the case of *any new license or the transfer of any license to a new location* the board may, in its discretion, grant or refuse such *new license or transfer* if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school,

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §4-404.

or public playground, or if such new license or transfer is applied for a place which is within two hundred feet of any other premises which is licensed by the board, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oil: And provided further, That the board shall refuse *any application for a new license or the transfer of any license to a new location* if, in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed: And provided further, That the Board shall not issue new licenses in any license district more than twice each license year, effective from specific dates fixed by the board, and new licenses shall not be granted, except for hotels as defined in this act, unless the application therefor shall have been filed at least thirty days before the effective date of the license: And provided further, That nothing herein contained shall prohibit the board from issuing a new license for the balance of any unexpired term in any license district to any applicant in such district, who shall have become eligible to hold such license as the result of legislative enactment, when such enactment shall have taken place during the license term of that district for which application is made or within the thirty days immediately preceding such term, nor shall anything herein contained prohibit the board from issuing at any time a new license for an airport restaurant, or municipal golf course, as defined in section 461 of this act, for the balance of the unexpired license

term in any license district: And provided further, That the board shall have the discretion to refuse a license to any person or to any corporation, partnership or association if such person, or any officer or director of such corporation, or any member or partner of such partnership or association shall have been convicted or found guilty of a felony within a period of five years immediately preceding the date of application for the said license. (Emphasis added.)

Further, in looking to Section 102 of the Liquor Code, 47 P.S. §1-102, we find the following legislative direction:

'Club' shall mean any reputable group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity to which the sale of liquor or malt and brewed beverages shall be only secondary, which, if incorporated, has been in continuous existence and operation for at least one year, and if first licensed after June sixteenth, one thousand nine hundred thirty-seven, shall have been incorporated in this Commonwealth, and, if unincorporated, for at least ten years, immediately preceding the date of its application for a license under this act, *and which regularly occupies, as owner or lessee, a clubhouse or quarters for the use of its members.* Continuous existence must be proven by satisfactory evidence. The board shall refuse to issue a license if it appears that the charter is not in possession of the original incorporators or their direct or legitimate successors. The club shall hold regular meetings, conduct its business through officers regularly elected, admit members by written application,

investigation and ballot, and charge and collect dues from elected members, and maintain such records as the board shall from time to time prescribe, but any such club may waive or reduce in amount, or pay from its club funds, the dues of any person who was a member at the time he was inducted into the military service of the United States or was enrolled in the armed forces of the United States pursuant to any selective service act during the time of the member's actual service or enrollment. (Emphasis added.)

Initially, we will deal with the parties' arguments with respect to Section 102. The Board would have us place a restrictive interpretation on the terms "club," "clubhouse" and "quarters" recited in the section by having us hold that these terms admit of only a singular interpretation, while Appellee argues that, notwithstanding the explicit singular nature of the terms "club" and "clubhouse," "quarters" should be construed broadly enough to include more than one physical location of the group of individuals who seek a license.

We are of the opinion that no useful purpose would be served by placing an unduly restrictive interpretation on Section 102. Most certainly, a reasonable interpretation of the term "quarters" does not, of necessity, dictate that the licensee limit the serving of liquor to only one location on its *premises*.[2] That a licensee could have quarters beyond its clubhouse is a construction dictated by logic.

Given this mandate of statutory construction, we now focus upon Section 404. The crucial language

---

[2] "Premises" is defined as "a tract of land including its buildings; a building together with its grounds or other appurtenances." The Random House Dictionary of the English Language, College Edition (1969).

with which we must be concerned states, "[p]rovided, however, [t]hat in the case of any new license *or the transfer of any license to a new location. . . ."* (Emphasis added.)

Capsulizing the Board's position on appeal, it may be stated that it would have us construe the above emphasized language to mean that it may only issue a license to cover one distinct building located at a specific place, thus precluding the possibility of a single licensee extending the license to more than one of its buildings at the same licensed premises. We are not unmindful that this would appear to be a departure from the basis for refusing the license espoused in the sole fiding of fact entered by the Board wherein it relied upon the absence of immediate connection or adjacency of Appellee's two buildings. That finding of fact appears to us to realistically view the "adjacency" or "connection" concept as a sanction of the extension of a license to a structure which is under the direct control of a licensee.

Appellee's position is, quite simply, that this clause should be interpreted to include reasonable extensions and more specifically, that the term "transfer to a new location" is of sufficient breadth to encompass extensions of a license to other buildings of a licensee situated at the same relative location as the originally licensed premises. We agree with Appellee's interpretation.

First, our reading of Section 102 dictates that we conclude that a licensee's clubhouse or quarters may indeed be encompassed in more than one building on the licensed premises and Sections 102 and 404 are clearly in *pari materia* in that they each relate to the term "club" under the Liquor Code. We must, therefore, construe the sections together. Statutory Construction Act of 1972, 1 Pa. C.S. §1932.

Second, we can think of no valid policy reason either expressed in the Liquor Code,[3] or otherwise, which would dictate the limitation sought by the Board. To limit an existing licensee, such as Appellee, to serving liquor in one of its buildings on its premises and not others on that same premises, seems a harsh result neither contemplated nor dictated by the General Assembly. We do not here hold that licensees with multiple locations or quarters on the same premises are ipso facto entitled to extensions of their licenses. Quite to the contrary, we are simply stating that the Board should carefully consider, and not automatically foreclose, applications for reasonable extensions within specific geographical confines such as that contemplated in the instant case.

Consistent with the foregoing, the order of the court below is affirmed and the extension of the club liquor license as sought by Appellee is granted.

Judge MENCER dissents.

ORDER

AND Now, this 25th day of July, 1977, the order of the Court of Common Pleas of Westmoreland County

---

[3] Section 104(c), 47 P.S. §1-104(c), states:

(c) Except as otherwise expressly provided, the purpose of this act is to prohibit the manufacture of and transactions in liquor, alcohol and malt or brewed beverages which take place in this Commonwealth, except by and under the control of the board as herein specifically provided, and every section and provision of the act shall be construed accordingly. The provisions of this act dealing with the manufacture, importation, sale and disposition of liquor, alcohol and malt or brewed beverages within the Commonwealth through the instrumentality of the board and otherwise, provide the means by which such control shall be made effective. This act shall not be construed as forbidding, affecting or regulating any transaction which is not subject to the legislative authority of this Commonwealth.

is affirmed and the extension of the club liquor license as sought by Appellee is granted.

CONCURRING OPINION BY JUDGE WILKINSON, JR.:

I concur in the result but am constrained to add that this important problem is worthy of legislative clarification by amendment of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §1-101 et seq. An express definition or specific designation in the Liquor Code of what constitutes the licensed premises is in order. Merely identifying additional parts of a licensed premises on which liquor may be sold is one thing. Amending the license to increase the size of the licensed premises should be quite something else. Beyond this is the transfer of the license from one licensed premises to another which should not be confused with what is being done here.

---

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

I must respectfully dissent as I am unable to agree with the majority's treatment of an "extension" of a license as the equivalent of a "transfer" under Section 404 of the Liquor Code (Code), 47 P.S. §4-404. A transfer would, by definition, require the surrender of the license with regard to the original location as a prerequisite to utilizing the same license at a new location. An extension, however, would merely require a redefinition of the licensed premises. Section 7.21 of the Regulations of the Pennsylvania Liquor Control Board (Regulations), 40 Pa. Code §7.21.

This distinction between transfers and extensions is recognized implicitly in the Regulations and in the Code which addresses itself only to transfers. Section 7.21 of the Regulations, the only express attempt to regulate extensions, states in pertinent part:

(a) No licensee may conduct any business permitted by his license on *any other premises, or any portion of the same premises other than*

*that for which the license was issued,* without the approval of the Board . . . except that the Board may approve an extension of the licensed premises to include the following:

(1) The abutting and adjacent sidewalk.

(2) The immediate, abutting, adjacent and contiguous vacant land. (Emphasis added.)

I believe this regulation to be controlling, and as it has not been challenged in these proceedings, its validity is not in issue. There being no other grant of authority to the Board to extend a license, I would reverse the order of the court below and reinstate the order of the Board. *See Thompson v. Pennsylvania Liquor Control Board,* 22 Pa. Commonwealth Ct. 344, 347, 348 A.2d 916, 918 (1975).

Judge BLATT joins in this dissent.