# Internationale Food Management Corp. v. PLCB

*Andrew Rose,* for plaintiffs.

*Charles F. Wade,* for the Pa. Liquor Control Board.

SWEET, *P.J.,* November 30, 1983—We have two related liquor matters. Internationale Food Management Corporation at No. 71 of 83 Misc. has an application for an extension of a liquor License. At No. 72 of 83 Misc., Supreme Courts, Inc. has an application for a new retail dispenser eating place license on a resort theory. The two were heard together.

Internationale Food Management Corporation currently holds a license for a club known as Club Internationale on the eighth floor of the Millcraft Center in the Second Ward of Washington, Pa. The

Supreme Courts, Inc. an athletic facility primarily, is located on the first floor of the same building.[1] The building and the courts are all parts of the corporate activity in the Piatt family enterprises.

The Liquor Control Board refused the extension on four grounds:

(1.) that the corporation does not have the right to occupy the proposed area due to the fact that the property owner has applied for a new retail license in these areas;

(2.) that the licensed areas are not adjacent and contiguous to the present areas;

(3.) that there are interior connections; and

(4.) that the proposed extension will bring the licensed premises within two hundred feet of another licensed establishment. This all reads like Mickeymouse which is precisely what it is.

The invalidity of the first ground for refusal is apparent on its face. The two cases heard here are in pari materia and supported by and involved in the same evidence and a victory in either will achieve the same result.

The Commonwealth Court has held in Latrobe Country Clubs v. Pa. Liq. Control Board, 31 Commw. 265, (1977), that the board was in error in construing the liquor law to mean that it:

---

1. The telephone book for the City of Washington shows that Millcraft Center and Supreme Courts both have an address at 90 West Chestnut Street. Polk's City Directory of Washington, Pennsylvania shows the same thing. The property is assessed as a single parcel, the assessment being as follows: $405,405 for the property which includes a commercial building and adjoining structure located on lots 187-193. In fact we have had a tax appeal on the assessment of this building to be found at No. 2 September 1981 A.D. The undersigned presided at this tax appeal and knows of his own knowledge that this is all one building. The undersigned lives in this neighborhood.

". . . . may only issue a license to cover one distinct building located at the specific place, thus precluding the possiblity of a single licensee extending the license to more than one of its buildings at the same licensed premises."

Here what is sought is to extend the license currently active in the Club's dining room, barroom, social rooms, etc. to a first floor location in the same building, owned by the same people but located conveniently near the Supreme Courts, Inc. These courts are not forums for the transaction of judicial business but a place where people play racquet ball. The Latrobe, supra, case squarely held that the construction by the board as used in paragraph two of the adjudication is not the law.

With respect to the PLCB's denial of the application on the ground that the proposed licensed area was not adjacent or contiguous to the presently licensed premises, we think the Board was clearly in error. Both Internationale Food Management Corporation (Club Internationale) and Supreme Courts, Inc. are lcoated at 90 West Chestnut Street, Washington, Pa. 15301, in the second ward thereof. The building in which the Supreme Courts is located was simultaneously constructed as an addition to the building in which Club Internationale is located and is an integral part of that building. Both locations are owned by the Washington County Industrial Development Authority.

The photograph submitted in evidence by the applicant clearly shows the unity of the structures, which have a common sidewalk and a common parking lot.[2]

2. This picture was submitted during the writing of the opinion replacing the much smaller one in evidence and is made a part of the record by the agreement of counsel on the telephone. It seems to me this is important enough to justify specific mention.

We think that the instant case is much stronger than some of the appellate court cases in which extensions have been approved.

Section 7.21(b) of 40 Pa. Code provides, inter alia, that "(t)he Board may approve the extension of the licensed premises to include the immediate, abutting, adjacent and contiguous vacant land." This section has been liberally construed by the Commonwealth Court on at least three occasions to allow extensions of licenses to separate buildings owned or controlled by a licensee which were on the same tract of land as his or its original licensed premises. Latrobe County Club v. Pa. L.C.B., 31 Pa. Commw. 265, 375 A.2d 1360 (1977); L.C.B. v. Swiftwater Inn, 45 Pa. Commw. 141, 405 A.2d 583 (1979); In Re: Burigatto, 63 Pa. Commw. 620, 438 A.2d 1015 (1982). In Latrobe, the court interpreted section 7.21 as permitting the extension of a club license to a "halfway house" on a country club's golf course, located 1000 feet from the clubhouse. The court interpreted section 7.21 to all "reasonable extensions within specific geographical confines" (id. at 273) and held that no useful purpose would be served by placing an unduly restrictive interpretation on extensions. In so holding, the court interpreted "the concept of adjoining or connection" as "a sanction of the extension of a license to a structure which is under the direct control of a licensee" (id. at 273). This rationale was applied in Swiftwater to permit a hotel to extend its license to a separate building 900 feet away across a bridge and in Burigatto to permit a restaurant to extend its license to a separate building 130 feet away.

Significantly, the court in both Latrobe and Swiftwater, (supra, defined the word "premises" as "a tract of land including its buildings", 31 Pa. Commw. at 271; 45 Pa. Commw. at 146. This defi-

nition is consistent with Latrobe court's reasoning that an "adjacent" structure is one located on the same tract as the already licensed premises and controlled by the license seeking the extension.

In the instant case, Internationale Food Management, Inc. is seeking the extension of its license to a structure which clearly fits this definition.

The third objection i.e. the connections between racquet ball area and the rooms to which the license is to be extended on the first floor will be dealt with under the resort application.

The fourth may be slightly closer to valid. The board held that the proposed extension will bring the licensed premises within 200 feet of another licensed establishment. We recognize here, as we must, that when premises proposed to be newly licensed are located within 200 feet of another licensed establishment such fact alone is sufficient basis for board refusal to grant or transfer the license. See Jack's Delicatessen, Inc. Liq. Lic. Case, 202 Pa. Super 481, (1964) repeated recently in Appeal of Elmer J. Hill Com., Liquor Control Board, 36 Pa. Comm. 604, 388 A.2d 791 (1978).

However, as is clear from a thoughtful reading of Fabian v. Pa. Liquor Control Board, 66 D.&C. 2d 526 (1975) an extension of the license is a different legal action from the grant of a new license or a place or person to person transfer. In Fabian, supra, the Berks County Court declined to allow the licensee to extend the license to a pavilion located approximately 125 feet west of the licensed premises. These two places were: ". . . separated by land including a road approximately 20 feet in width known as Maidencreek Road. It would be difficult for motorists to see the pavilion . . . It is apparent that the board predicated its order on its finding that a public road intervenes . . . A public road is more

than a means of conveyance for vehicular traffic, it is a divider of people, places and things . . . " See also Club Oasis, Inc. Liquor License Case, 200 Pa. Super 439, 444, 188 A.2d 792 (1963).

Here the licensee is not moving, and not even going across the street but only seeking to function in additional rooms of the same building. It will all be under one roof in every sense of the word. The dissenting opinion of President Judge Bowman in the Latrobe Country Club, supra, case touches on this. He says, and I do not think this contradicts the majority opinion in Latrobe, supra,:

"A transfer would, by definition, require the surrender of the license with regard to the original location as a prerequisite to utilizing the same license at a new location. An extension, however, would merely require a redefinition of the licensed premises. Section 7.21 of the Regulations of the Pennsylvania Liquor Control Board (Regulation), 40 Pa. Code §7.21."

The regulations say that one can't conduct business on other premises or any portion of the same premises other than that area for which the license was issued, unless the further approval of the Board be obtained. This causes applications from time to time to add a room or two to a successful bar business, for country clubs to get a license extended to the tees, for hotels to get license extended to a hutch by the swimming pool, etc. The rules about the nearness of other license and the nearness of restrictive institutions obviously do not apply to extension cases.[3] The Act 47 Pa.C.S.A. §4-404 says:

_____

3. The restrictive institution, the Y.M.C.A. of Washington and the nearest license, Shorty's, a hotdog parlor, have not objected.

". . . Provided, however, that in the case of any new license or the transfer of any license to a new location the board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license or transfer is applied for a place which is within two hundred feet of any other premises which is licensed by the board, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oil . . ." (e.s.)

An extension is different from a new license or transfer.

In D. & D. Restaurant Liquor License, 52 Lackawanna Jurist 154, (1951) it says this:

". . . pending the application the board approved an extension of the premises of the 'Court Square Hotel' at 242 Adams Avenue to include part of the same building known as No. 244, the rear door of which is fifty to seventy-five feet from the rear of the Y.W.C.A. property. Appellants argue that because the rear of the Adams Avenue taverns are within three hundred feet of the restrictive institutions they are entitled to a license for the premises at 608 Linden Street . . . The legislation involved does not apply to State Liquor Stores *or to the extension of existing licenses.*" (Emphasis supplied.)

This being true we must decide if the extension of an existing license offends public policy. Since neither Shorty's or the Y.M.C.A. has objected, in fact they have "consented" in a sense there is no outrage. There are no protestants here. 47 Pa.C.S.A. §4.463 says:

"Nothing contained in this act shall be construed

to prevent the holder of restaurant liquor or malt and brewed beverage license from selling liquor and malt or brewed beverages in a bowling alley when no minors are present where the restaurant and bowling alley are immediately adjacent and under the same roof. The restaurant liquor or malt and brewed beverage licensee aforementioned shall be subject to all the conditions and restrictions applicable to such restaurant licenses except the above prohibition against any passageway or communication between a licensed premises and a place of amusement."

We suggest that there may be a strong analogy between racquet ball courts and bowling alleys and that the same largess will be extended to them by construction. This citation, supra, also suggests that the interior connections rule in board objection three is inapplicable.

The other aspect of this case deals with the application of Supreme Courts, Inc. for an eating place license.

Washington is well over the quota, so the application advances the "resort" theory.

Although this court has entertained this doctrine in the past and justified certain licenses in various selected locations[4] each resort application, as the awkward metaphor has it, stands on its own bottom.

It is somewhat difficult to call West Chestnut Street in Washington a resort area.

Washington itself is a tourist town and there are many things here which can and do bring the influx

---

4. e.g. Engle's Holiday Harbor for boaters on the Mon River; the Kandle Keller for those pouring out from Pittsburgh to go to the racetrack; Charleroi Rod and Gun Club for a variety of reasons collected in the opinion.

of travellers requisite to such a designation as "resort".

The undersigned has recognized the pulling power of the Bradford House, the first Crematorium, the LeMoyne House and its artifacts, the racetrack and the other drawing cards Washington holds for the historically and recreationally inclined. Likewise we in this Court have noted in license cases the presence of Washington-Jefferson College, the boating Mecca on the Monongahela River, the Century Inn, the events at Morganza in the Burr-Wilkinson conspiracy, the Old Trails Festival and many other such things which bring people here in profitable throngs from time to time during the year.

Fortunately, we do not have to contradict the lessons of history, the appeal of antiquarianism, or even the thrust of local pride in this instance. The question of whether this applicant is a resort area beneficiary can be avoided by the narrow denial that the presence of racquet ball courts is enough to make a place a resort. We do not hold that this is not a resort area and create no such precedent today.

The Commonwealth has a much stronger point to support its negative position on the Supreme Court's application, e.g. the nearness of a restrictive institution.

Even though an "area" may be a resort area, that determination only gets the applicant past quota objections. If the applicant was, as this one of course is not, a convicted murderer, he could not get a license just by proving the bar was next door to the most crowded tourist attraction of the century.

If the Pennsylvania Liquor Control Board determines that a restrictive institution is within the uncharmed circle and that this proximity is inimical to the health, welfare, morals, etc. of the people, we cannot overrule them here. The dispensation of

waiving nearness to a restrictive institution is for the board and not for the court.

In these circumstances, we feel that an extension of an existing license near a restrictive institution (and also near another licensee) does not violate policy because it does not increase the number of saloons near a church or create a skid row. However, to declare a resort area on that corner does not properly overrule the discretion the Board can exercise and has exercised in the Supreme Courts' application. Hence, we sustain the decision of the Liquor Control Board on the Supreme Courts case at No. 72 of 83 Misc. and reverse their decision in Internationale Food Management. This is fully consistent with the weight of authority.

Accordingly, the Liquor Control Board is directed to issue the extension sought by Internationale Food Management and is sustained in its refusal to grant a license to Supreme Courts, Inc. Exceptions all around.