644 A.2d 1270

**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant,**

v.

**David H. McCABE, Karen G. McCabe, t/a Olde Keg Lounge.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 7, 1993.

Decided Aug. 17, 1993.

Publication Ordered July 14, 1994.

Nadia L. Vargo, for appellant.

David H. McCabe, for appellees.

## ORDER

SILVESTRI, Senior Judge.

AND NOW, this 14th day of July, 1994, it is ORDERED that the above-captioned opinion filed August 17, 1993, shall be designated OPINION, rather than MEMORANDUM OPINION, and it shall be reported.

Before COLINS and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The Bureau of Liquor Control Enforcement, Pennsylvania State Police (Bureau), appeals from an order of the Court of Common Pleas of Cambria County (trial court) which affirmed the decision of the Pennsylvania Liquor Control Board (PLCB) upholding dismissal of a citation issued by the Bureau to David H. and Karen G. McCabe (Licensee), holders of a liquor license for the Olde Keg Lounge, charging them with violations of the Liquor Code.[1]

The pertinent facts were established by the testimony of the Bureau's former enforcement officer, Marcy Guido. Officer Guido began her investigation of the Olde Keg Lounge on January 9, 1991, and visited the premises on January 26, 1991 and February 20, 1991; neither of these visits uncovered violations. She had intended to close the investigation after the second visit, but it remained open due to the receipt of additional complaints. Sometime after February 20, 1991, Officer Guido, who had a caseload of approximately sixty investigations at the time, lost the file and did not find it again and resume work on the investigation until approximately one week before her final visit to the premises on September 8, 1991. Between February 20, 1991 and September 8, 1991, the only work performed in connection with the investigation were unsuccessful attempts by Officer Guido to contact some of the complainants.

On September 8, 1991, Officer Guido returned to the Olde Keg Lounge where she observed alleged Liquor Code viola-

1. Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101—9–902.

14

tions. The Bureau mailed a notice of violation to Licensee on September 18, 1991. A citation was issued on October 8, 1991.[2]

Following a hearing, the PLCB's administrative law judge (ALJ) dismissed the citation, holding that the Bureau had failed to meet its burden of proving that Licensee was notified of the alleged violations within thirty days of completion of the investigation as required by Section 471(b) of the Liquor Code, 47 P.S. § 4-471(b).

The Bureau appealed to the PLCB which affirmed the ALJ's decision. Appeal was then taken to the trial court which also affirmed. The Bureau now appeals to this court,[3] arguing that the trial court's decision constituted an error of law and was not supported by substantial evidence.[4]

The trial court relied on *Pennsylvania Liquor Control Board v. Gatling Saloon and Dance Hall Corp.*, 98 Pa.Commonwealth Ct. 377, 511 A.2d 272 (1986), for the proposition that an adverse inference may be drawn where there is no corroborative evidence of an ongoing and continuing investigation. Thus, the trial court found that the gap in investigatory activity between the Bureau's visits to the premises on February 20, 1991 and September 8, 1991 supported the ALJ's

2. The citation charged Licensee with the following violations:
   1. On September 8, 1991, you, by your servants, agents or employees, sold, furnished and/or gave alcoholic beverages on Sunday after 2:00 A.M., in violation of Sections 406(a)(2) and 493(16) of the Liquor Code, 47 P.S. §§ 4-406(a)(2) and 4-493(16).
   2. On September 8, 1991, you, by your servants, agents or employees, failed to require patrons to vacate that part of the premises habitually used for the service of alcoholic beverages not later than one-half hour after the required time for cessation of the service of alcoholic beverages, in violation of Section 499(a) of the Liquor Code, 47 P.S. § 4-499(a).

3. This appeal was submitted on the brief of the Bureau only.

4. Our scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion and whether the trial court's findings are supported by substantial evidence. *Pennsylvania Liquor Control Board v. McKeesport Beer Distributor, Inc.*, 120 Pa.Commonwealth Ct. 554, 549 A.2d 256 (1988).

conclusion that the Bureau's investigation had ended more than thirty days before notice was served.

The Bureau argues that the investigation into a violation must be open on the day the violation is uncovered, and therefore notice must be timely under Section 471(b) if, as in the present case, it is served within thirty days of the violation date. The Bureau further argues that Licensee, having been served with notice within thirty days of the violation date, was not denied an adequate opportunity to prepare a defense. Additionally, the Bureau contends that *Gatling* is not controlling since that case is factually distinguishable from the present one.

At issue in this case is the notice provision of Section 471(b) of the Liquor Code, 47 P.S. § 4-471(b), which provides as follows:

> No penalty provided by this section shall be imposed for any violations provided for in this act unless the bureau notifies the licensee of its nature within thirty days of the completion of the investigation.

We are mindful in construing Section 471(b) that the object of statutory interpretation and construction is to ascertain the intention of the legislature and to give effect to all the statute's provisions. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). In ascertaining legislative intent, we may consider the consequences of a particular interpretation, 1 Pa.C.S. § 1921(c); and we may presume that the legislature did not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1922.

The Liquor Code does not define the term "investigation" or explain when an investigation is deemed complete for purposes of Section 471(b).[5] However, for the reasons dis-

5. Section 2-211(a) of the Liquor Code, 47 P.S. § 2-211(a), provides in pertinent part:

   (a) ... Officers and investigators assigned to the bureau shall have the power and their duty shall be:

   (4) To investigate and issue citations for any violations of this act or laws of this Commonwealth relating to liquor, alcohol or malt or

cussed below, the notice provision makes sense only if the "investigation" refers to the activity of the Bureau which uncovered the violation of which the licensee must be notified. Thus, in the present case, the "investigation" corresponding to the alleged violations uncovered on September 8, 1991, could not have ended prior to that date, and the trial court erred in holding that it did.

As the trial court reads Section 471(b), once the Bureau begins an investigation, in order to comply with the thirty-day notice requirement, it must be able to prove continuous investigatory activity from the beginning of the investigation until thirty days before notice is served. This interpretation finds no support in the Liquor Code, and we do not believe that the legislature intended by the notice provision of Section 471(b) to regulate the Bureau's investigatory procedures in this manner.

The purpose of notice under Section 471(b) supports our statutory construction. The Supreme Court, referring to the notice provision of Section 471 prior to the Liquor Code's 1987 amendment (former Section 471) [6], stated: "The purpose of this provision is to give warning to the licensee that his activities have been under investigation and that his license is about to be endangered." *Pennsylvania Liquor Control Board v. Greenspan*, 438 Pa. 129, 132, 264 A.2d 690, 691 (1970).[7] More recently, in *Becker v. Pennsylvania Liquor*

brewed beverages, or any regulations of the board adopted pursuant to such laws or any violation of any laws of this Commonwealth or of the Federal Government, relating to the payment of taxes on liquor, alcohol or malt or brewed beverages by any licensee, his officers, servants, agents or employees.

**6.** The former Section 471 provided in pertinent part:

No penalty provided by this section shall be imposed by the board or any court for any violations provided for in this act unless the enforcement officer or the board notifies the licensee of its nature and of the date of the alleged violation within ten days of the completion of the investigation which in no event shall exceed ninety days.

**7.** Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922, provides that when a court of last resort has construed the language in a statute, we may presume that the legislature in subse-

*Control Board,* 44 Pa.Commonwealth Ct. 616, 406 A.2d 1153 (1979), this court rejected a due process challenge to the notice provision of the former Section 471, stating that "[t]he statutory time limitations provided in Section 471 gives a licensee due and timely notice of potential discipline, and gives him an adequate opportunity to prepare a defense including the certainty and the availability of witnesses." *Id.* at 619, 406 A.2d at 1154. It is clear that the trial court's interpretation of the notice provision in the present case is unrelated to the purpose of that provision, since the notice served within thirty days of the violation date provided Licensee with an adequate opportunity to prepare a defense.

Finally, the trial court's reliance on *Gatling* is misplaced. *Gatling* was decided on the following facts. Enforcement officers visited the premises twice and observed violations; thereafter no work was performed in connection with the investigation for more than a month until a final visit was made to the premises on a day on which it was closed. A notice of violation was mailed within ten days of the final visit, and the PLCB argued that notice was timely served because the final visit constituted part of a continuing investigation. This court affirmed the trial court's ruling that the investigation had ended shortly after the last productive visit. This court reasoned that if the final visit was accepted as conclusive evidence of the ongoing nature of the investigation, then the PLCB could revive completed investigations by similar unproductive visits solely to satisfy the notice provision of Section 471. The reasoning underlying *Gatling* is inapplicable in the present case because the Bureau, which had not yet uncovered a violation, could not have intended to resume its investigation after the period of inactivity in order to meet the thirty-day notice requirement of Section 471(b). Nor, as previously noted, did the Bureau's prolonged investigation deny Licensee an adequate opportunity to prepare a defense.

Accordingly, we reverse the decision of the trial court and remand with directions.

quent statutes on the same subject matter intends the same construction to be placed upon the language.

*ORDER*

AND NOW, this 17th day of August, 1993, the order of the Court of Common Pleas of Cambria County, dated September 30, 1992, is reversed and the trial court is directed to reinstate the citation and remand to the Pennsylvania Liquor Control Board for further proceedings consistent with this decision.

Jurisdiction relinquished.