**PITTSBURGH STADIUM
CONCESSIONS,
INC.**

v.

**COMMONWEALTH of Pennsylvania,
PENNSYLVANIA LIQUOR CON-
TROL BOARD, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 1, 1995.
Decided March 19, 1996.
Reargument Denied May 6, 1996.

Rodrigo J. Diaz, Assistant Counsel, for Appellant.

Roslyn M. Litman, Martha S. Helmreich and Mark F. Flaherty, for Appellee.

Before SMITH and FRIEDMAN, JJ., and NARICK, Senior Judge.

SMITH, Judge.

The Pennsylvania Liquor Control Board (Board) appeals from an order of the Court of Common Pleas of Allegheny County that overruled the Board's denial of an application on behalf of Pittsburgh Stadium Concessions, Inc. (PSC) for a performing arts facility license, which would permit PSC to serve wine and liquor to patrons of performing arts events held at Three Rivers Stadium. The issues presented by the Board are whether PSC failed to demonstrate that it has met the requirements of Section 408.3 of the Liquor Code [1] and thus is not entitled to a performing arts facility license and whether the trial court erred in reversing the Board's decision to deny a performing arts facility license where the Board had other sufficient grounds to do so.

Pursuant to an agreement with the Pittsburgh Stadium Authority, PSC is responsible for the food and drink concessions at Three Rivers Stadium. Although patrons of the performing arts who are seated in private boxes or at the Allegheny Club, a small restaurant in the stadium, may be served any type of alcoholic beverages, patrons seated in the general admission area may be served only beer. On June 29, 1994, PSC, in accordance with Section 408.3(a.1) of the Liquor Code, applied for a performing arts facility license, which would permit PSC to serve wine and liquor to patrons of performing arts events throughout the stadium. Section 408.3(a.1) provides that the Board may issue licenses to operators of theaters for the performing arts permanently located at a single site with seating accommodations affixed to the theater structure for at least 1,000 persons.

Following an evidentiary hearing,[2] the Board issued an opinion and order refusing PSC's application on the following grounds: (1) the proposed licensed premises are located within 200 feet of other establishments licensed by the Board, thereby giving the Board discretion under Section 404 of the Liquor Code, 47 P.S. § 4-404, to refuse a new license application;[3] (2) that PSC, as applicant, does not qualify as an operator of a theater for the performing arts permanently located at a single site having seating accommodations, affixed to the theater structure, for at least 1,000 persons as required by Section 408.3(a.1); and (3) that the facility has not been operating as a theater for the performing arts for a period of one year prior to the date of the application as required by Section 408.3(b.1) of the Liquor Code.

After an evidentiary hearing on PSC's appeal to the trial court, at which PSC again presented Lawler's testimony, the trial court held that when the stadium is hosting performing arts events, it is a theater for the performing arts within the meaning of Section 408.3. The trial court further noted that other similar facilities in the area (specifically, the Civic Arena and the Duquesne University's A.J. Palumbo Center) have been granted performing arts facility licenses.

---

1. Act of April 12, 1951, P.L. 90, *as amended,* added by Section 2 of the Act of March 23, 1972, P.L. 122, 47 P.S. § 4-408.3.

2. PSC presented the testimony of Timothy J. Lawler, PSC's on-site manager at Three Rivers Stadium, who also assists at the Civic Arena. The Board presented the testimony of Mark W. Kennedy, a licensing investigator for the Board who examined the proposed premises.

3. Section 404 provides that even if an applicant has satisfied all other requirements for a license:
   [T]he board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school or public playground or if such new license or transfer is applied for a place which is within two hundred feet of any other premises which is licensed by the board. . . .

## I.

The dispute in the present case arises over the Board's interpretation of Section 408.3. The Board first contends that Three Rivers Stadium is not a theater for the performing arts because it does not have a permanent theater structure, i.e., a stage, and did not have such a structure for at least a year prior to the application. On the other hand, PSC contends that a permanent stage is not a necessary component of a theater structure. Nonetheless, to support its position, the Board cites Section 102 of the Liquor Code, 47 P.S. § 1–102, which defines performing arts facilities as "those halls or theaters in which live musical, concert, dance, ballet and legitimate play book-length productions are performed."

In contrast to the Liquor Code's definition of performing arts facilities, the Board cites Section 433.1(a) of the Liquor Code, 47 P.S. § 4–433.1(a), relating to stadium or arena permits. That section permits the Board to issue permits allowing "retail sales of malt or brewed beverages in shatterproof containers at all events on premises *principally utilized for competition of professional and amateur athletes and other types of entertainment* having an available seating capacity of: (1) twelve thousand or more in cities of the first and second class...." (Emphasis added.)

The Board also cites Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922, which provides that statutes are not to be interpreted so that an absurd or unreasonable result is reached and asserts that in view of applicable provisions of the Liquor Code, Three Rivers Stadium cannot be considered a performing arts facility under Section 408.3. Otherwise, the Board argues that Section 433.1, which regulates licenses for stadiums or arenas, would be rendered meaningless. In *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. McCabe*, 163 Pa.Cmwlth. 11, 644 A.2d 1270, 1272 (1993), this Court noted that the "object of statutory interpretation and construction is to ascertain the intention of the legislature and to give effect to all the statute's provisions." In ascertaining legislative intent, courts may consider the consequences of a particular interpretation, *see* 1 Pa.C.S. § 1921(c).

■ Further, in *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board*, 158 Pa.Cmwlth. 283, 631 A.2d 789 (1993), this Court stated that "[t]he construction given a statute by those charged with its execution and application is entitled to great weight and should only be disregarded or overturned for cogent reasons and if clearly erroneous." *Id.* 631 A.2d at 792. Moreover, this Court has expressly stated that the purpose of the Liquor Code is not to promote the sale of liquor, rather it is to regulate and restrain the sale of liquor. *Id.* As is the case here, absent a clear abuse of discretion or new findings of fact, the trial court may not reverse the Board. *McGonigel's Inc. v. Pennsylvania Liquor Control Board*, 663 A.2d 890 (Pa.Cmwlth.1995). Therefore, the Liquor Code must be interpreted so as to give effect to both Section 408.3 and Section 433.1.

■ Where the trial court conducts its own evidentiary hearing and issues its own findings of fact, this Court's scope of review is to determine whether there is substantial evidence to support the trial court's findings of fact and whether the trial court abused its discretion or committed an error of law. *McGonigel's Inc.* However, in liquor matters, the Board is the finder of fact. *Id.*

## II.

The parties essentially do not dispute the following facts. Three Rivers Stadium, the home of the Pittsburgh Pirates baseball team and the Pittsburgh Steelers football team, is primarily a sports stadium with a seating capacity of 58,500. Although it has been used occasionally for large outdoor concerts by such performers as Pink Floyd and the Rolling Stones, the stadium does not have its own permanent stage. Instead, the performers bring their own stages which are constructed for each performance and then taken down following the shows. These concert events are infrequent: five in 1994, two in 1993 and four in 1992.

■ In view of these facts, this Court must conclude that because it is principally used for sporting events, Three Rivers Stadi-

um cannot be considered a theater for the performing arts all under Section 408.3 of the Liquor Code. To accept PSC's argument, that any large municipal sports stadium that occasionally hosts a musical event qualifies it for a performing arts facility license, all would render Section 433.1 meaningless. This Court does not believe the legislature intended such an unreasonable result in interpreting the relevant statutory provisions. The Court accordingly concludes that the trial court erred in reversing the Board's denial of PSC's application for a performing arts facility license for the stadium.[4]

■ PSC's counter argument is that the Board's interpretation of Section 408.3 is inconsistent with its past approvals of performing arts facility licenses for the Pittsburgh Civic Arena and Duquesne University's A.J. Palumbo Center. However, the parties stipulated before the trial court that those licenses were issued administratively without a hearing before the Board. Those administrative decisions have no precedential value before this Court. *See Standard Fire Ins. Co. v. Insurance Department,* 148 Pa. Cmwlth. 350, 611 A.2d 356 (1992). More importantly, those licenses are not before this Court for review and thus cannot serve as the basis for a misinterpretation of Section 408.3.

■ Nevertheless, PSC cites *Standard Fire Ins. Co.* for the rule that, although not bound by stare decisis, an agency has an obligation to follow, distinguish or overrule its own precedent. The evidence of record indicates, by the much larger number and variety of activities held, that although the other facilities are used for indoor sporting events, they do not fit the description of facilities "principally utilized" for athletic competition as contemplated by Section 433.1. The record reflects that the Civic Arena and A.J. Palumbo Center regularly host all types of musical events from Luciano Pavarotti to Metallica, as well as other events such as ice shows, trade and civic expositions, religious gatherings, comedy shows, circuses, the Lipizaner Stallions and Beauty and the Beast. In contrast, Three Rivers Stadium is used almost exclusively for sporting events. The Board's denial of a performing arts facility license for Three Rivers Stadium is not inconsistent with the Board's prior issuance of such licenses to the Civic Arena and the A.J. Palumbo Center; its order, therefore, does not violate the rule articulated in *Standard Fire Ins. Co.*

■ The trial court noted that patrons of Three Rivers Stadium who have private boxes or visit the Allegheny Club may be served alcoholic beverages during musical events (as well as sporting events); these patrons are being served, however, pursuant to a stadium restaurant license issued under Section 408.2 of the Liquor Code, added by Section 1 of the Act of November 25, 1970, P.L. 770, 47 P.S. § 4–408.2 (which permits the sale of wine and liquor). Thus the Board did not act "arbitrarily" as perceived by the trial court in permitting the sale of wine and liquor in the restaurant and catered areas of Three Rivers Stadium while not permitting such sales in the general admission areas. Accordingly, the order of the trial court is reversed, and the order of the Board denying PSC's application for a performing arts facility license is reinstated.

### *ORDER*

AND NOW, this 19th day of March, 1996, the order of the Court of Common Pleas of Allegheny County is reversed, and the order of the Pennsylvania Liquor Control Board is reinstated.

---

4. Having held that the Board correctly determined that Three Rivers Stadium does not meet the criteria set forth in Section 408.3 for a theater for the performing arts, this Court need not address the Board's alternative contention that the location of other liquor licensees within 200 feet of the proposed premises provides an alternative ground for the denial of a license.

Furthermore, by order dated October 12, 1995, this Court denied the Board's motion for a remand without prejudice to the Board to argue for a remand in its brief. In view of the Court's decision to reverse the trial court, the Board's motion for remand pursuant to *McGonigel's Inc.* is moot.