*Williams v. F.L. Smithe Mach. Co.,* 395 Pa.Super. at 516–517, 577 A.2d at 910.

In *Collins v. Greene County Memorial, supra,* this court reiterated the need for litigants to act promptly in effectuating a transfer of a federal case which has been dismissed for jurisdictional reasons. Therein, this court found that a nearly seven month delay which occurred before any indication was made by the appellants that they intended to pursue their state claims, was not prompt. The court called for the legislature to include a specific 30 day time requirement in the provisions of 42 Pa.C.S.A. § 5103. *Collins,* 419 Pa.Super. at 525, 615 A.2d at 763. *See also Kurz v. Lockhart,* 656 A.2d 160 (Pa.Cmwlth.1995)(which held that appellants were required to transfer their action to state court promptly after a federal court dismissal and that state action brought within one year with reference to 42 Pa.C.S.A. § 5535, was not prompt. Appellants were required to transfer the matter promptly in accordance with 42 Pa.C.S.A. § 5103.)

 We conclude that the trial court correctly relied on the provisions of 42 Pa.C.S.A. § 5103, as interpreted by the courts of this Commonwealth, in dismissing Appellant's complaint. We further add that there was no need for the court to undertake a fact-finding function in order to make this determination. As was stated in *Collins,* "the Appellants cannot claim that because of a lack of interpretive case law under § 5103, they did not know what was required of them." *Id.* at 524, 615 A.2d at 762. In this case there was a delay of nearly one year before Appellant's filing with the state court. Appellant's excuse that it was uncertain whether the defendant was judgment proof does not serve as a just reason to deviate from established precedent.

Order affirmed.

PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant,

v.

GMR RESTAURANTS OF PENNSYLVANIA, INC.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1996.

Decided Jan. 29, 1997.

Robin Coward, Assistant Counsel, Conshohocken, for appellant.

Mark F. Flaherty, Pittsburgh, for appellee.

Before DOYLE and SMITH, JJ., and LORD, Senior Judge.

SMITH, Judge.

The Liquor Control Board (Board) appeals from an order of the Court of Common Pleas of Bucks County (trial court) that reversed the Board's decision to deny in part a restaurant liquor license application filed by GMR Restaurants of Pennsylvania, Inc. (GMR). The Board questions whether the trial court committed an error of law and/or abuse of discretion by substituting its discretion for that of the Board by granting GMR's restaurant liquor license application in full for two separate and distinct restaurant operations, and whether the Board committed an error of law and/or abuse of its discretion by refusing to grant GMR's application for a proposed secondary service area where it fails to comport with the underlying requirements of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101—9–902.

I

GMR submitted an application for double transfer of a restaurant liquor license (person-to-person and place-to-place) in January 1995. The premises proposed to be licensed included one building to operate as "The Olive Garden Italian Restaurant" (The Olive Garden) and another building located 207 feet away to operate as the "Red Lobster" restaurant (Red Lobster). The area in the midst of the two buildings was designated as a shared parking lot. GMR designated The Olive Garden as the primary service area and the Red Lobster as the secondary service area. On June 28, 1995, the Board approved the liquor license transfer application for the primary service area only and, thereafter, denied GMR's separate application for licensure of the secondary service area, submitted by GMR at the direction of the Board. The Board considered, among other things, the quota system that is a part of the regulatory scheme, allowing for limits on the number of restaurant liquor licenses issued in each municipality, *see* Section 461 of the Liquor Code, 47 P.S. § 4–461, and the Board concluded that the secondary service area would operate as a second primary service area in contravention of requirements of the Liquor Code.

GMR appealed to the trial court, which, after a trial de novo, reversed the Board's decision. The trial court ordered the Board to approve GMR's original license application for the entire premises, including both restaurants, and to approve, as well, GMR's subsequent application for the secondary area. The court determined that GMR met the standards for a secondary service area as set forth in Section 406.1 of the Liquor Code, added by Section 3 of the Act of December 17, 1982, P.L. 1390, 47

P.S. § 4–406.1, and that the Board lacked the discretion to refuse its approval of the application on the ground that the proposed operation would circumvent the Liquor Code's quota provision for liquor licenses. Where the trial court hears a liquor license matter de novo, this Court's scope of review is limited to determining whether substantial evidence exists to support the trial court's findings of fact or whether the trial court committed an error of law or abused its discretion. *Slovak–American Citizens Club of Oakview v. Pennsylvania Liquor Control Board*, 120 Pa.Cmwlth. 528, 549 A.2d 251 (1988).

The Board contends that Section 406.1 of the Liquor Code must be interpreted in a manner consistent with the general purpose of the Liquor Code, which is to restrain or discourage the sale of liquor. *See, e.g., Pennsylvania Liquor Control Board v. Backer*, 113 Pa.Cmwlth. 373, 537 A.2d 100 (1988). Citing *Ulana, Ltd. v. Pennsylvania Liquor Control Board*, 86 Pa.Cmwlth. 345, 484 A.2d 859 (1984), the Board notes that Section 404, 47 P.S. § 4–404, confers authority in the Board to refuse a license application if licensure would be detrimental to the health, welfare, peace and morals of the neighborhood within a 500 feet radius or if the premises otherwise fail to meet all of the requirements of the Liquor Code. The Board further notes that in the past, GMR has submitted separate, individual license applications in which GMR represented the two restaurant operations as separate and distinct entities, thereby necessitating independent licensing consideration.[1]

■ GMR maintains that the trial court's decision should be affirmed because the Board has previously granted secondary service area applications in instances similar to the facts in this case, and, therefore, the Board did not possess the discretion to refuse GMR's secondary service area application. The Court is not persuaded by GMR's position in this context because past approvals of other applications have no precedential value before this Court in its review of Board denials of liquor license applications, particularly where the previously approved licenses are not before the Court for review. *Pittsburgh Stadium Concessions, Inc. v. Pennsylvania Liquor Control Board*, 674 A.2d 334 (Pa.Cmwlth.), *appeal denied*, —— Pa. ——, 686 A.2d 1314 (1996).

II

As to the Board's authority to approve applications for secondary service area, Section 406.1 of the Liquor Code provides in relevant part:

Upon application of any restaurant, hotel, club, any stadium ... or municipal golf course liquor licensee, and payment of the appropriate fee, the board may approve a secondary service area by extending the licensed premises to include one additional permanent structure with dimensions of at least one hundred seventy-five square feet, enclosed on three sides and having adequate seating. Such secondary service area must be located on property having a minimum area of one (1) acre, and must be on land which is immediate, abutting, adjacent or contiguous to the licensed premises with no intervening public thoroughfare.... There shall be no requirement that the secondary service area be physically connected to the original licensed premises.

Neither Section 406.1 nor any other provision of the Liquor Code provide an adequate definition for a secondary service area.

■ In ascertaining legislative intent under these circumstances, a court must presume that the General Assembly does not intend an absurd or unreasonable result. *See* Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922. Webster's Third New International Dictionary 2050 (1966) defines secondary in part: "of second rank, importance, or value" and "immediately derived from something original, primary, or basic." In applying this definition, the Board reasonably concluded that the two restaurants are separate business enti-

---

1. These past applications have resulted in GMR obtaining forty-eight separate liquor licenses for the two restaurants (thirty for The Olive Garden and eighteen for the Red Lobster) and one for another separate restaurant.

ties with no perceptible connection to or dependence upon each other for operation. Approval of a single liquor application license application for two separate restaurants, with one designated as the secondary service area, would allow the applicant for the proposed secondary service area to circumvent the standard liquor licensing procedures, a result clearly unintended by the legislature.

■ Under the guiding principles set forth in the Statutory Construction Act of 1972, the Board's administrative interpretation of a statute in the absence of explicit statutory language may not be disregarded unless it is clearly erroneous. *Roberts v. Pennsylvania Liquor Control Board,* 146 Pa.Cmwlth. 64, 604 A.2d 1152 (1992). In *Roberts* the Court held that the Board's interpretation of Section 404 of the Liquor Code and the Board's reliance upon Section 406.1 to deny a new hotel liquor license due to the presence of a public thoroughfare separating the dining facilities from the guest rooms was not clearly erroneous. The Court determined that the Board properly construed the Liquor Code to give effect to all of its provisions, and, although no specific Liquor Code provision mandated approval or disapproval of a license in this instance, the Court upheld the Board's reliance upon Section 406.1 to justify its denial of the license. In doing so, the Court noted that Section 404 is broad enough to encompass extensions of liquor licenses, and, contrary to GMR's assertion here, the Court concluded that Sections 404 and 406.1 should be read in pari materia.[2]

GMR cites *Latrobe Country Club v. Pennsylvania Liquor Control Board,* 31 Pa. Cmwlth. 265, 375 A.2d 1360 (1977), to support its position that the application may not be refused merely because the two restaurants can function individually. GMR maintains that under the applicable case law, "premises" include all structures existing on the land and that an application may not be denied simply because activities requiring licensure are conducted in separate edifices. GMR's application of that principle to these circumstances in incorrect. In *Latrobe*

*Country Club* this Court determined that a licensee is not restricted to conducting all activities related to the licensure in the same building. However, the Court concluded that the licensee was permitted to serve liquor in more than one building on its premises because the ongoing activities were all related to the same original purpose for which the license was granted.

The Court specifically stated in *Latrobe Country Club* that it did not determine that licensees with multiple structures on the same premises were ipso facto entitled to license extensions but was "simply stating that the Board should carefully consider, and not automatically foreclose, applications for reasonable extensions within specific geographical confines...." *Id.,* 375 A.2d at 1363. In *Pennsylvania Liquor Control Board v. Swiftwater Inn, Inc.,* 45 Pa.Cmwlth. 141, 405 A.2d 583 (1979), the Court found that a license extension may not be denied simply because the structure to be licensed was located at a distance from the main structure on the same premises. Yet, in both of these instances, the license extension was sought to include a building that was used to conduct activities encompassed within the use of the premises originally licensed.

In the case sub judice, the restaurants are separate and distinct entities with neither structure being dependent upon the other for its existence and/or operation. As the Board noted, each restaurant is competing for the same customer, and the primary structure, The Olive Garden, is not merely seeking to supplement its services for its existing customers. The Red Lobster would operate independently and as a competitor of The Olive Garden and would function in the same manner as the primary service area. The Board's interpretation of Section 406.1 of the Liquor Code to conclude that The Olive Garden and the Red Lobster are two separate and distinct restaurants is neither clearly erroneous nor indicative of an abuse of the Board's discretion. Thus its decision to deny the liquor license for the Red Lobster was appropriate and consistent with the underly-

---

**2.** *See also Slovak–American Citizens Club of Oakview v. Pennsylvania Liquor Control Board,* 120 Pa.Cmwlth. 528, 549 A.2d 251 (1988); *Carol*

*Lines, Inc. v. Pennsylvania Public Utility Commission,* 83 Pa.Cmwlth. 393, 477 A.2d 601 (1984).

ing purposes of the Liquor Code. Accordingly, because the trial court erred in disregarding the Board's interpretation, the order of the trial court is reversed.

### ORDER

AND NOW, this 29th day of January, 1997, the order of the Court of Common Pleas of Bucks County is reversed.