638 A.2d 948

Kevin BUMBERGER, Appellant,

v.

COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT.

Michael SMEARMAN, Appellant,

v.

COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT.

Patricia R. YOUNG, Appellant,

v.

COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT.

Supreme Court of Pennsylvania.

Argued May 5, 1993.

Decided March 9, 1994.

Edwin P. Smith, Philadelphia, for Kevin Bumberger.

Richard C. Angino, Harrisburg, amicus in support of appellants, Pennsylvania Trial Lawyers Ass'n.

Sharon M. Profeta, Stephen F. Capone, Pittsburgh, for Michael Smearman.

David M. Landay, Pittsburgh, for Patricia R. Young.

Preston M. Buckman, Harrisburg, Heidi B. Hamman Shakely, Camp Hill, for Com. Ins. Dept.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

This appeal involves three cases consolidated in the Commonwealth Court for review of a common question, whether the Insurance Commissioner properly interpreted Act 4 of 1989, 75 Pa.C.S. § 1798.2, in denying catastrophic loss benefits. We affirm.

Kevin Bumberger was riding a bicycle in Bucks County on June 1, 1989, when he was struck by a car. The car was registered in New Jersey but was being operated by a Pennsylvania resident. Bumberger did not own a motor vehicle. His grandmother, however, with whom he resided, did own a vehicle, which carried a Pennsylvania registration valid through September of 1989. Bumberger received $10,000 in medical benefits under the insurance policy covering her car. Total medical expenses, however, exceeded $175,000. A claim filed with the Catastrophic Loss Benefits Continuation Fund (CAT Fund) was denied.

Patricia Young was also injured while riding a bicycle. She was struck by a car on June 17, 1989, in Mercer County. The car was registered in North Carolina. Young resided with her parents. She did not own a car. Her father, however, owned a truck, which carried a Pennsylvania registration valid through November of 1989. Young's medical expenses exceeded $100,000. Her claim to the CAT Fund was also denied.

Michael Smearman was injured on June 8, 1989, in Washington County, while riding as a passenger in a vehicle purchased and registered in Pennsylvania in April of 1989. Smearman did not own a car. He resided with his parents, and his mother owned a car which carried a Pennsylvania

registration valid through September of 1989. Smearman's medical expenses exceeded $100,000. His claim to the CAT Fund was denied as well.

In 1984, the General Assembly repealed the Pennsylvania No-fault Motor Vehicle Insurance Act and adopted the Motor Vehicle Financial Responsibility Law (MVFRL). Subchapter F of the MVFRL established a system under which Pennsylvania residents who sustained injuries arising out of the use of a motor vehicle would receive benefits for payment of medical expenses in excess of $100,000 and up to $1,000,000. These benefits were payable from the Catastrophic Loss Trust Fund, which was funded by an assessment paid annually in conjunction with the registration of each vehicle.

According to the statutory definitions, a person was deemed ineligible if he or she owned a vehicle but failed to comply with the vehicle registration requirements. One was also ineligible if he or she was injured while driving or riding a motorcycle or similar vehicle, which were not subject to the annual fee for the Fund, or a vehicle that was not intended for highway use. Otherwise, a person was eligible for benefits as "a resident of this Commonwealth who suffers an injury ... arising out of the maintenance of a motor vehicle." 75 Pa.C.S. § 1761 (repealed).

On December 12, 1988, Subchapter F was repealed. On April 26, 1989, the General Assembly acted to fill the gap left by the repeal. Act 4 of 1989 provided that as of June 1, 1989, insurers were required to offer, for an additional premium, an extension to the first party benefits coverage for extraordinary medical expenses, that is, in excess of $100,000 and up to $1,000,000. Act 4 also contained a "savings provision" governing the period from December 12, 1988, through June 1, 1989. That section provided:

§ 1798.2 **Transition**

(a) **Savings provision.**—Notwithstanding the repeal of Subchapter F (relating to Catastrophic Loss Trust Fund) by the Act of December 12, 1988 ..., *all natural persons* who suffer or suffered a catastrophic loss prior to June 1, 1989,

*or who may suffer a loss during the registration year for which payment was made in accordance with former section 1762 (relating to funding),[1] shall continue to receive, or be eligible to receive, catastrophic loss benefits as if Subchapter F had not been repealed.*

75 Pa.C.S. § 1798.2. (Emphasis added).

The emphasized language gives legislative recognition to the fact that some vehicle owners would have paid the annual CAT Fund fee for a period concurrent with a yearly vehicle registration due to expire after June 1, 1989. The Insurance Commissioner interpreted this language as extending eligibility for that period only to the owners of the vehicles themselves.

The appellants argue that this interpretation is inconsistent with the statute itself and thus is invalid. Bumberger and Smearman argue that the savings provision continued eligibility "as if Subsection F had not been repealed," and that as relatives who resided with persons who had paid the CAT Fund fee for registration periods expiring after June 1, 1989, they are eligible for benefits.

The Insurance Commissioner and Commonwealth Court properly rejected this argument because it misconstrues the basis of eligibility under Subchapter F, confusing that scheme with the structure for first party benefits under insurance policies. As previously noted, and as recognized by the appellants, persons were eligible for catastrophic loss benefits simply by virtue of their status as residents of Pennsylvania, and not because of their relationship to someone who had paid into the fund.[2] The savings provision revived this scheme and continued it through May 31, 1989. As of June 1, 1989, however, eligibility was limited to "all natural persons ... who may suffer a catastrophic loss during the registration year for

1. The savings provision was amended on July 1, 1989, to insert the word "respectively" at this point.

2. It is noteworthy in this regard that failure to comply with registration requirements, including failure to pay the annual CAT Fund fee, rendered *the owner of a vehicle* ineligible, but did not affect the eligibility of relatives residing with such an owner.

which payment was made in accordance with former section 1762." This language, by itself, does not indicate that the legislature intended to incorporate the concepts of first party benefits under insurance policies into the standards for eligibility under the Fund.

The statute is ambiguous, however, in that it fails to explain the linkage between the persons who may suffer a catastrophic loss and the making of a payment for a given registration year. Under Subchapter F as originally enacted, there was no positive connection between payment and eligibility. A person did not purchase eligibility for benefits by paying the fee for the year; all Pennsylvania residents were eligible unless they were required to pay the fee and failed to do so, or they were injured while riding a motorcycle or similar vehicle and thus exempted from payment of the fee and from receiving benefits from the Fund. As a result, the language of Act 4 extending eligibility for losses "during the registration year for which payment was made," introduced an ambiguity in the form of the concept that by paying the fee a vehicle owner had purchased certain coverage for the year.

Given this ambiguity, Appellant Young presents a more sophisticated argument as to why, under the rules of statutory construction, the savings provision of Act 4 should be interpreted so as to extend benefits consistently with the system for first party benefits under insurance policies. First, she cites the rule that, in ascertaining legislative intent, it is presumed that the legislature "intends that the entire statute be effective and certain," 1 Pa.C.S. § 1922(2). She then points to subsection (c) of the transition provision, 75 Pa.C.S. § 1798.2(c). That subsection requires insurers to provide the following notice to their policyholders after receiving approval from the Insurance Commissioner for extraordinary medical benefit rates:

## IMPORTANT NOTICE

### EXTRAORDINARY MEDICAL BENEFITS

By virtue of recent amendment to the Motor Vehicle Financial Responsibility Law, as of June 1, 1989, the *first party*

*benefits coverage* may be extended to provide an extraordinary medical benefit which will pay the medical and rehabilitation costs *for you and your family members residing in your household* which are more than $100,000 for each person injured as the result of an automobile accident, up to a lifetime benefit limit of $1,000,000 for each person. The cost of this extraordinary medical benefit coverage on an annual basis is $      per vehicle. If you wish to purchase the extraordinary medical benefit coverage, please notify your agent or insurance company for additional information. If you do not wish to purchase extraordinary medical benefit coverage, please disregard this notice.

(Emphasis added.)

Young argues that under the Insurance Commissioner's interpretation, a vehicle owner whose registration year had not expired would personally be eligible for CAT Fund benefits but family members residing in the household would not. To replace the coverage that had existed under the Fund, such an owner would have to purchase extraordinary medical benefit coverage for family members but not for himself. Young notes that the notice provision required by the legislature in section 1798.2(c) makes no mention of purchasing separate coverage for family members. From this, she discerns that the legislative intent was to phase in the new optional emergency medical benefits coverage on a household basis, and argues that it would be unreasonable to find that the legislature intended to phase out the mandatory CAT Fund coverage on any other basis.

The flaw in this reasoning is that the Notice makes no mention of the extension of CAT Fund coverage "during the registration year for which payment was made." Guided strictly by the Notice, vehicle owners have no cause to believe that they are entitled to extended CAT Fund coverage, much less that they can buy separate supplemental coverage for family members for the remainder of the registration year and for themselves thereafter. The Notice indicates only that as

of June 1, 1989, extraordinary medical benefits coverage is a policy option, for which an additional premium can be paid to increase the amount of benefits available to owner and family members in the same manner as basic benefits are available to owner and family members. Thus, the language of the Notice contained in section 1798.2(c) does not, as Young argues, suggest a phasing in of extraordinary medical benefits coverage. On the contrary, the Notice identifies a single date— June 1, 1989—as the date when such coverage is available as an extension of first party benefits.

Young also argues that interpreting the savings provision in the context of the MVFRL as a whole requires that the phasing out of CAT Fund eligibility be done on a household basis in order to be consistent with the legislative scheme regarding first party benefits. She notes that the scheme under which one is entitled to medical benefits as an insured by virtue of residence in the household of a relative who is a named insured dates back to the repealed No-fault Motor Vehicle Insurance Act. She further asserts that the CAT Fund "was merely an extension of these same benefits for catastrophic injuries."

This argument fails because one of its premises is erroneous. Despite the longstanding usage of the concept that first party benefits cover relatives residing in a household as well as the named insured, the CAT Fund was not, as Young suggests, "merely an extension of these same benefits for catastrophic injuries." Benefits under the CAT Fund were available based on one's status as a Pennsylvania resident and had no nexus to a family member having paid the fee.

Finally, Young observes that the notice required by section 1798.2(c) identifies the optional extraordinary medical benefits coverage as an extension of first party benefits coverage. Since this form of coverage was replacing the CAT Fund system, Young argues that the legislature must have intended that the extension of CAT Fund eligibility "during the registration year for which payment was made" apply not only to

the vehicle owner who paid the fee but to members of his or her household as well.

Though superficially appealing, this argument does not survive scrutiny either. It must be recalled that the legislature repealed Subchapter F outright in December of 1988, making no provision for extending CAT Fund eligibility to anyone. The legislative record clearly indicates that the legislature took this action because the system was severely underfunded. As structured, the system was unable to derive sufficient funds from the annual fees and investment interest generated therefrom to cover the claims that had been made. Nor could it make sound fiscal projections of the amount of money that would be needed in the future to cover an uncertain number of claims of undefined amounts.

Having abolished the CAT Fund system, however, the legislature later acknowledged that claims ought to be honored where they had arisen while that Fund was the mechanism for providing benefits to state residents with automobile related medical expenses over $100,000. This was accomplished by means of the savings provision, 75 Pa.C.S. § 1798.-2(a), enacted in April of 1989, which "revived" the repealed Subchapter F, retroactively back to the date of repeal, and forward for slightly more than one month, through May 31, 1989.

The language in question constituted the other part of the savings provision, and must be interpreted in the same light, i.e., the "revival" of the CAT Fund, despite its being actuarially unsound, for certain circumstances as a matter of fairness. By extending eligibility to "all natural persons ... who may suffer a catastrophic loss during the registration year for which payment was made in accordance with former section 1762," the legislature recognized that vehicle owners, in a real sense, had been compelled to pay the annual fee *in order to maintain eligibility for themselves,* and in fairness should not be deprived of that eligibility so long as the year for which they had paid had not expired.

A number of considerations discernable pursuant to 1 Pa. C.S. § 1921(c)[3] support this interpretation. Under Young's reading we would have to believe that the legislature altered the fundamental eligibility structure (from one where eligibility was not based on payment except for the disqualifying case of non-payment to one where payment entitled a person and his resident relatives to benefits), under a legislative scheme that had already been repealed, in order to bridge a brief interval of time. It seems highly unlikely that the legislature would intend to revise repealed legislation at all, let alone make such a fundamental change.

Another compelling point, advanced by the Insurance Department, is that under Young's interpretation, a substantial number of people would have retained eligibility beyond June 1, 1989, declining month by month as the registrations paid between June and December of 1988 expired. This is at odds with the legislature's purpose in repealing Subchapter F—stabilizing the unfunded liability of the Fund and eliminating new claims against the Fund. The Department's interpretation, by contrast, limits the extended eligibility to the smallest number of persons possible consistent with the language of the savings provision.

Finally, it is noted that the Department's interpretation is more consistent with the presumption "[t]hat the General Assembly intends to favor the public interest as against any private interest," 1 Pa.C.S. § 1922(5).

The Order of the Commonwealth Court is affirmed.

3.   When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
   (1) The occasion and necessity for the statute.
   (2) The circumstances under which it was enacted.
   (3) The mischief to be remedied.
   (4) The object to be attained.
   (5) The former law, if any, including other statutes upon the same or similar subjects.
   (6) The consequences of a particular interpretation.
   (7) The contemporaneous legislative history.
   (8) Legislative and administrative interpretations of such statute.

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., files a dissenting opinion in which CAPPY, J., joins.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.

MONTEMURO, Justice, dissenting.

I must respectfully dissent. The savings provision which the Majority interprets as applicable only to vehicle owners is, in fact, far more universal since it extends CAT Fund benefits to "all natural persons" who have been injured during the time period in question. There are no other limitations placed on eligibility, nor is there an exclusion for the families of vehicle owners who have paid their fee, and whose registrations had not expired as of June 1, 1989. Appellants come within this category of persons.

While the legislature was certainly at liberty to include specific language altering existing eligibility rules in the manner the Majority contemplates, it failed to do so. There is no need to inquire into legislative intent where the language of a statute is clear, and here the statutory language does not support the Majority's result. Accordingly, I would reverse the order of the Commonwealth Court.

CAPPY, J., joins this dissenting opinion.