Louis A. MEIER, M.D., Alphonse DiGiovanni, M.D., Robert Driscoll, M.D., Arthur Martella, M.D., Petitioners,

v.

Cynthia MALESKI, Acting in her Official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania and Joseph Pulcini, Director of the Medical Prob. Liability Catastrophe Fund, Respondents.

Martin BRENNAN, M.D., Gordon Clement, M.D., George R. Homa, D.O., Ronald A. Leonard, M.D., William Davie Smith, M.D., Elizabeth Sun, M.D., individually and as members and representatives of that class of Commonwealth of Pennsylvania "health care providers" as defined by 40 Pa.C.S. 1301.701 of the Health Care Services Malpractice Act (hereinafter "the Act") who were required to insure their professional liability in compliance with the Act by participating in the Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Fund (hereinafter "CAT Fund") and who suffered illegal overcharges at the hands of the CAT Fund which was created by the Act and administered by the Defendants for surcharges applicable to any or all of the years 1987–94, Petitioners,

v.

Thomas CALLAHAN, Bruce Daley, Joseph Pulcini, Thomas Judge (in their official capacities while acting as Directors of the Medical Professional Liability Catastrophe Fund of the Commonwealth of Pennsylvania 1986–94), Cynthia Maleski, Constance Foster, George Grode (in their official capacities while acting as Insurance Commissioners for the Commonwealth of Pennsylvania 1986–94), Respondents.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1995.
Decided Jan. 25, 1996.

---

**3.** Because of our disposition of this case, we   need not consider DOT's remaining issues.

Daniel Gray, for Petitioners.

Marybeth Christiansen, for Respondents Thomas Callahan, Bruce Daley, Joseph Puccini and Thomas Judge.

Before SMITH, FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Presently before this court are cross-motions for summary judgment from consolidated actions addressed to this court's original jurisdiction. At the heart of this case is the proper interpretation to be given the $15,000,000 surplus maintenance provision in section 701(e)(1) of the Health Care Services Malpractice Act (Act),[1] a key element in determining the annual surcharge which health care providers must pay into the Medical Professional Liability Catastrophe Fund (CAT Fund).[2] Section 701(e)(1) of the Act provides:

[1] Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. § 1301.701(e)(1).

[2] Pursuant to the Act, Pennsylvania health care providers must remit an annual surcharge to the CAT Fund in order to retain their health care provider's license. 40 P.S. § 1301.701(f). A pri-

The fund shall be funded by the levying of an annual surcharge on or after January 1 of every year on all health care providers entitled to participate in the fund. The surcharge shall be determined by the director appointed pursuant to section 702 and subject to the prior approval of the commissioner. The surcharge shall be based on the cost to each health care provider for maintenance of the professional liability insurance and shall be the appropriate percentage thereof, **necessary to produce an amount sufficient to reimburse the fund for the payment of all claims paid and expenses incurred during the preceding calendar year** *and to provide an amount necessary to maintain an additional $15,000,000.*

40 P.S. § 1301.701(e)(1). (Emphases added.)

This case continues the dispute first dealt with by this court on preliminary objections in *Meier v. Maleski,* 167 Pa.Cmwlth. 458, 648 A.2d 595 (1994). In *Meier,* Louis A. Meier, M.D., Alphonse DiGiovanni, M.D., Robert Driscoll, D.O., and Arthur Martella, M.D. (*Meier* Petitioners), Pennsylvania health care providers who had been paying the annual surcharge into the CAT Fund, filed an Amended Petition for Review in the Nature of a Complaint in Equity (Petition) against Cynthia Maleski, acting in her official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania, and Joseph Pulcini, Director of the CAT Fund (*Meier* Respondents). *Meier* Petitioners

maintained that, because of the $15,000,000 surplus maintenance provision in section 701(e)(1) of the Act, any CAT Fund amounts exceeding this $15,000,000 cap must be applied to reduce the surcharge for the upcoming year.[3] However, as a result of *Meier* Respondents' alleged failure to compute the surcharge amount in accordance with the statutory mandate of section 701(e)(1) of the Act, *Meier* Petitioners claimed that they were assessed excessive surcharge amounts during 1987, 1988, 1990 and 1991. Accordingly, through the Petition, *Meier* Petitioners sought recomputation of the surcharge amounts to reflect their interpretation of the Act with credit for any overcharges, and asked for an accounting of all CAT Fund surcharge determinations assessed on health care providers during the years 1987–1993. We overruled *Meier* Respondents' preliminary objections to this Petition, following which *Meier* Respondents filed an answer to the Petition.

In October 1994, with discovery underway in the *Meier* action, Martin Brennan, M.D.,[4] William Davie Smith, M.D., Gordon Clement, M.D., George R. Homa, D.O., Ronald A. Leonard, M.D., and Elizabeth Sun, M.D. (*Smith* Petitioners), filed a proposed Class Action Complaint against Thomas Callahan, Bruce Daley, Joseph Pulcini and Thomas Judge (Directors), current and prior Directors of the CAT Fund, and Cynthia Maleski, Constance Foster, and George Grode (Commissioners), current and former Insurance Commissioners of the Commonwealth of

mary purpose in establishing the CAT Fund was to assure the availability of reasonably priced professional liability insurance for all Pennsylvania health care providers and to insure that persons injured as a result of medical malpractice may obtain prompt adjudication of their claims and receive reasonable compensation for those claims. Section 102 of the Act, 40 P.S. § 1301.102. To this end, the CAT Fund provides additional professional liability coverage of up to $1,000,000 over and above the "basic coverage insurance" which eligible health care providers are required to have. 40 P.S. § 1301.701(d). Annual and emergency surcharges levied on health care providers, along with any income realized by surcharge investment or reinvestment, provide the sole and exclusive source of funding for the CAT Fund. 40 P.S. § 1301.701(e)(1)–(4).

**3.** According to *Meier* Petitioners, section 701(e)(1) of the Act provides a simple mathemati-

cal formula for determining the appropriate surcharge percentage for a given year. First, compute the past year's claims history and expenses. Second, because the surcharge must generate an amount sufficient to cover these costs plus an additional $15,000,000, review the CAT Fund's year-end filing balance and, if it exceeds $15,000,000, subtract the excess from the total amount to be generated. Finally, divide the new total by 1% of the total fees that health care providers pay for their basic coverage. *Meier* Petitioners claimed that *Meier* Respondents violated the Act's surplus provision by failing to subtract year-end amounts above $15,000,000 prior to determining surcharge rates.

**4.** On June 29, 1995, Brennan filed a motion to be withdrawn as a party/class representative in this action, which was granted.

Pennsylvania (collectively, *Smith* Respondents). In the Class Action Complaint, *Smith* Petitioners asserted the identical arguments raised by *Meier* Petitioners in their Petition[5] and, like that Petition, the Class Action Complaint included a demand for an accounting.[6] Upon *Smith* Respondents' motion, this court consolidated the *Smith* and *Meier* cases, and Respondents[7] filed a Motion for Summary Judgment on the controlling legal question which is dispositive in both actions; that is, whether, as Respondents contend, the $15,000,000 surplus maintenance provision represents a "floor" rather than a "ceiling" for purposes of calculating the surcharge amount.

Petitioners[8] have filed a cross-motion for partial summary judgment, seeking to have this court require Respondents to provide an accounting of all CAT Fund surcharge determinations levied on Petitioners for years 1987–94. Contending that the plain language of the Act requires the CAT Fund to collect only enough to pay claims and expenses and *maintain* $15,000,000, Petitioners argue that Respondents clearly violated the Act in treating the $15,000,000 as a floor. Petitioners assert that an accounting is needed to identi-

fy and confirm amounts they have been overcharged due to Respondents' continued Act violations so that they may be afforded relief. Moreover, Petitioners seek injunctive relief to prevent future Act violations by Respondents.

■ Initially, we note that summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits, show that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035(b); *Giddings v. Tartler,* 130 Pa.Cmwlth. 175, 567 A.2d 766 (1989). Here, Respondents contend that this case presents no genuine issue of material fact, but, instead, involves a pure legal question concerning statutory construction and legislative intent.[9] Matters of statutory construction are for the court's determination, giving appropriate weight to the judgment of those administering the questioned statute. *Higher Education Assistance Agency v. Abington Memorial Hospital,* 478 Pa. 514, 387 A.2d 440 (1978). With this standard in mind, we first consider Respondents' motion for summary judgment.

---

5. For a full account of the claims made in that Petition, see *Meier,* 648 A.2d at 598–599.

6. The request for an accounting appears in Count 1 of the Class Action Complaint. In addition, the *Smith* Petitioners raised claims of fraud and negligent misrepresentation in Counts 2 and 3 of their Class Action Complaint. *Smith* Respondents filed preliminary objections to these latter counts and on January 23, 1995, following oral argument, Judge Rodgers of this court sustained the preliminary objections and dismissed Counts 2 and 3 of the *Smith* Class Action Complaint with prejudice. After a series of rulings on the appealability of this dismissal, *Smith* Petitioners filed a Motion for Certification of the Class, which has been continued generally.

7. The term Respondents refers to both the *Meier* and *Smith* Respondents.

8. The term Petitioners refers to both the *Meier* and *Smith* Petitioners.

9. We agree that no genuine issue of material fact exists to preclude entitlement to summary judgment here. In claiming otherwise, Petitioners refer to several factual disputes; however, we agree with Respondents that these disputes are either irrelevant or immaterial to the legal question before this court, that is, the statutory inter-

pretation to be afforded section 701(e)(1) of the Act.

Petitioners claim that there are still outstanding discovery requests relating to financial information; however, Respondents correctly point out that no discovery remains outstanding in the *Meier* case and that no discovery requests have been served in *Smith.* Additionally, Petitioners claim that the CAT Fund has a "statutory monopoly" over medical professional liability coverage and that Respondents, as fiduciaries of the Fund, "induced Petitioners' reliance" on the annual surcharge calculation. Petitioners also assert that the statute does not allow them an adequate period of time to review surcharge calculations. However, the truth or falsity of these allegations has no impact on the proper interpretation of section 701(e)(1) of the Act.

Petitioners also contend that "internal documents" of the CAT Fund contradict Respondents' position that the $15,000,000 figure is a floor. Further, as the basis for a factual dispute, Petitioners rely on the testimony of a former CAT Fund Deputy Director that the amount above $15,000,000 serves as a cushion to allow for lower surcharges. However, again, whether or not Petitioners' contentions are true, they would not control the question of statutory construction of the Act.

■■■ Our aim in statutory construction is to ascertain and effectuate the intent of the legislature. Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). When the language of a statute is clear and free from all ambiguity, any further deliberation as to its meaning is unwarranted. 1 Pa.C.S. § 1921(b); *American Trucking Associations, Inc. v. Scheiner,* 510 Pa. 430, 509 A.2d 838 (1986), *rev'd on other grounds,* 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). However, to the extent that the words are not explicit, we may consider, among other matters, the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the former law, if any, including other statutes upon the same or similar subjects, the consequences of a particular interpretation, the contemporaneous legislative history and the legislative and administrative interpretations of the statute. 1 Pa.C.S. § 1921(c)(1–8).

Contrary to Petitioners' claim, we do not find the language of section 701(e)(1) of the Act free of ambiguity.[10] The provision never explicitly states whether the statutory buffer amount is to be treated as a minimum or as a maximum and, indeed, the $15,000,000 figure in that section could be interpreted either as a floor or as a cap. Therefore, we may properly resort to other considerations in order to ascertain the legislative intent behind this section of the Act.

To this end, Respondents direct us to the Act's legislative history, specifically to the Act's original version and to a General Assembly committee report issued prior to the amendment of section 701 of the Act in 1980. As originally enacted, section 701 provided:

If the total fund exceeds the sum of $15,-000,000 at the end of any calendar year after the payment of all claims and expenses, including the expenses of operation of the office of the director, the director shall reduce the surcharge provided in this section in order to maintain the fund at an approximate level of $15,000,000.

Act of October 15, 1975, P.L. 390 (amended 1980). Thus, as originally enacted in 1975, section 701 clearly imposed a $15,000,000 limit on the CAT Fund's closing balance by specifically requiring that any monies in excess of this amount be applied to reduce the surcharge for the upcoming year. The Act also made provision for any shortfall in the Fund's closing balance by providing that:

If the fund would be exhausted by the payment in full of all claims allowed during any calendar year, then the amount paid to each claimant shall be prorated. Any amounts due and unpaid shall be paid in the following calendar year.

Act of October 15, 1975, P.L. 390 (amended 1980).

In 1980, however, the General Assembly amended the Act, eliminating both of the above provisions and altering the manner of dealing with excesses and shortfalls in the CAT Fund's closing balance. Significantly, the surcharge reduction requirement was deleted, and the pro rata allocation for shortfalls was replaced with a provision allowing the commissioner to determine and levy an emergency surcharge on all health care providers in the event that the Fund would be exhausted by the payment in full of all claims and expenses. 40 P.S. § 1301.701(e)(3).

■■■ A change in the language of a statute ordinarily indicates a change in legislative intent. *Masland v. Bachman,* 473 Pa. 280, 374 A.2d 517 (1977); *Hock v. Unemployment Compensation Board of Review,* 50 Pa.Cmwlth. 517, 413 A.2d 444 (1980). Indeed, the legislature's deletion of statutory language renders the language inoperative and indicates that the legislature has admitted a different intent. *Deremer v. Workmen's Compensation Appeal Board,* 61 Pa. Cmwlth. 415, 433 A.2d 926 (1981). In this regard, we must agree that an examination

---

**10.** Petitioners note that the plain language of the Act unquestionably directs Respondents to levy a surcharge sufficient to pay claims and expenses and "maintain" an additional $15,000,000. Although Petitioners claim that this wording unambiguously supports their interpretation of the Act, we cannot agree. To provide a basis for their claim, Petitioners would have us read section 701(e)(1) of the Act as mandating a surcharge amount sufficient to reimburse the Fund for claims and expenses and to provide an amount necessary to maintain *no more than* an additional $15,000,000. We decline to read words into a statute which do not appear there.

of the legislative history of the Act resolves any question of the meaning of section 701(e)(1) in favor of the Respondents' interpretation. The 1980 amendments clearly eliminated the previously existing $15,000,000 cap and accompanying surcharge reduction requirement. If, as Petitioners claim, the General Assembly intended that this reduction obligation remain, no alteration would have been necessary.[11] Thus, we must conclude that the material changes in the provision evidence a clear legislative intent to abolish the statutory cap.

This interpretation is further bolstered by a report issued to the General Assembly in 1979. Section 1006 of the Act, 40 P.S. § 1301.1006, created a six-member Committee to review the application and operation of the Act to determine if any changes were necessary or advisable. Following its review, which included a public hearing, of, among other things, the $15,000,000 statutory limit on the CAT Fund and the 10% surcharge limit, the Committee urged prompt removal of the $15,000,000 cap as "inadequate" and "actuarily unsound," observing:

> The Act limits the surcharge to a maximum of 10% of the cost of each health care provider's professional liability insurance or $100 whichever is greater. Additionally, the Act limits the Fund to approximately $15,000,000. These arbitrary limits of a 10% surcharge and a maximum of $15,000,000 are contradictory to the provision of § 701 which provides that the surcharge be determined based upon actuarial principles, and § 704 which states that the adequacy of the surcharge be based on a reasonably anticipated payment of claims and other expenses of the fund during the period for which the surcharge is made.

Committee Report at 4–5. (Exhibit D of Respondent Pulcini's Motion for Summary Judgment.)

The Committee report went on to explain that because CAT Fund liabilities far exceeded the $15,000,000 cap, health care providers would soon face extremely large surcharges to cover the deficits. The Committee then offered this recommendation.

> In our view, the General Assembly should remove the $15,000,000 cap and the 10% surcharge limit—actuarily unsound numbers—and permit the [CAT Fund] to accumulate more money in order to avoid these sudden large surcharges against the health care providers.
>
> . . . .
>
> At present, we are living in a fool's paradise. The $15,000,000 maximum and the 10% surcharge limit established by the Act are inadequate and actuarily unsound.
>
> These artificial restraints should be removed promptly so as to permit a buildup in the [CAT Fund] before high surcharges have to be made against the health care providers.

Committee Report at 5–6. (Exhibit D of Respondent Pulcini's Motion for Summary Judgment.)

Respondents contend that the current version of section 701(e)(1) of the Act reflects the legislature's adoption of the Committee recommendation. We agree. *See Young v. Insurance Dept.*, 145 Pa.Cmwlth. 587, 604 A.2d 1105 (1992), *aff'd*, 536 Pa. 169, 638 A.2d 948 (1994) (concluding legislative policy as expressed in House and Senate journals may be used to aid statutory construction); *Bryant v. Riddle Memorial Hospital*, 689 F.Supp. 490 (E.D.Pa.1988) (concluding statements in a congressional committee report recommending adoption of legislation are highly authoritative in determining the purpose of that legislation).

■ Finally, we note that in interpreting a statute, we may consider the practical results of a particular interpretation. 1 Pa.C.S. § 1921(c)(6). It is presumed that the General Assembly does not intend an absurd or unreasonable result to follow from its enact-

---

11. Petitioners argue that the amendment to the Act merely clarified the Act's vague pre–1980 language, requiring the CAT Fund Director to maintain the Fund "at an approximate level of $15,000,000," by now requiring the maintenance of exactly $15,000,000. We must disagree. In fact, in light of the other changes to this provision, most particularly the deletion of the surcharge reduction requirement, we believe that elimination of the words "approximate level" actually supports Respondents' claim that the 1980 amendment has converted what was previously a maintenance level into a floor, requiring "at least" $15,000,000 as a closing balance.

ments. *Lehigh Valley Co-op. Farmers v. Bureau of Employment Security Department of Labor & Industry,* 498 Pa. 521, 447 A.2d 948 (1982); *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. McCabe,* 163 Pa.Cmwlth. 11, 644 A.2d 1270 (1993). Asserting the unworkability of a $15,000,000 cap, as identified in the Committee report,[12] Respondents maintain that the General Assembly could not have intended to retain this fiscal restraint because such action would jeopardize the CAT Fund's future viability. Again, this argument lends support to Respondents' interpretation of the Act.[13] Based on the above discussion, we grant Respondents' Motion for Summary Judgment.

Petitioners' Cross–Motion for Summary Judgment is premised on an interpretation of section 701(e)(1) which sets that section's $15,000,000 amount as a cap, so that amounts in excess of that statutory limit must be used to reduce surcharge rates. On this basis, Petitioners claim that they were overcharged during those years in which the CAT Fund's year end balance exceeded $15,000,000 and, thus, are entitled to an accounting as a matter of law to determine the existence and extent of those overcharges. Moreover, Petitioners claim entitlement to an injunction to prevent future overcharges. However, having determined that Respondents' interpretation of section 701(e)(1) is correct, thereby entitling them to summary judgment, we must conclude that Petitioners' claims of overcharge are baseless. Therefore, we deny Petitioners' motion for partial summary judgment.

*ORDER*

AND NOW, this 25th day of January, 1996, the Motion for Summary Judgment filed by Respondents is hereby granted. The Cross-motion for Partial Summary Judgment filed by Petitioners is hereby denied.

12. Although made fifteen years ago, Respondents contend that the Committee's findings are even more compelling today in light of significantly increased litigation. Respondents point out that the CAT Fund's surplus balance has fallen below $15,000,000 for the past several years and, in fact, the Insurance Commissioner was recently forced to levy an emergency surcharge to cover a revenue shortfall in the CAT Fund, notice of which appears in the September 30, 1995 *Pennsylvania Bulletin* at Volume 25, No. 39, page 4190.

13. As an additional basis to grant summary judgment, Respondents assert that, even if Petitioners were overcharged, they cannot recover the relief

they seek because any recovery due Petitioners could not legally come from the CAT Fund, but would have to be obtained from the Petitioners themselves in the form of an emergency surcharge or future escalated annual surcharge. In support of this argument, Respondents state that the CAT Fund cannot access the General Fund of the Commonwealth, but derives its sole funding from annual surcharges and, if necessary, emergency surcharges. 40 P.S. §§ 1301.701(e)(2) and 1301.701(e)(4). Because we have determined that Respondents are entitled to summary judgment based on the principles of statutory interpretation, we decline to address this second basis. *But see Meier,* 648 A.2d at 605–606 n. 19.