The INSURANCE DEPARTMENT OF the COMMONWEALTH of Pennsylvania and the Catastrophic Loss Benefits Continuation Fund, as successor to the Catastrophic Loss Trust Fund, Plaintiffs

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Commonwealth Court of Pennsylvania.

Argued Jan. 31, 2006.

Decided March 29, 2006.

Brian H. Simmons, Pittsburgh, for plaintiffs.

Marshall J. Walthew, Philadelphia, for defendant.

BEFORE: SMITH–RIBNER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

## OPINION BY Judge COHN JUBELIRER.

This case arises out of a tragic one-car accident, on June 16, 1989, in which then nineteen-year old Charles Barlow (Barlow) suffered catastrophic injuries on State Highway 27 in Cape May County, Middle Township, New Jersey.[1] To date, Barlow remains in a vegetative state as the result of severe brain injuries.

At the time of the accident, Barlow was a licensed Pennsylvania driver living with his parents in Aston, Pennsylvania. He was driving a car registered in Pennsylvania to his father, and insured under a Pennsylvania automobile insurance policy issued to his father by Allstate Insurance Company (Allstate). The Insurance Department of the Commonwealth of Pennsylvania (Department) and the Catastrophic Loss Benefits Continuation Fund, as successor to the Catastrophic Loss Trust Fund (CAT Fund) (collectively Plaintiffs), who have paid benefits to Barlow since his accident, filed a Complaint seeking to recover from Allstate the benefits it has paid. Plaintiffs argue that, because the accident occurred in New Jersey, under the applicable New Jersey statutory provision, Allstate is solely responsible for Barlow's medical expenses. Plaintiffs, therefore, seek reimbursement of $865,995.23 paid by the CAT Fund over a twelve-year period. Since discovery has been completed, Plaintiffs have filed a motion for summary judgment (Motion) claiming there are no disputed issues of fact, and they are entitled to judgment under the law. Allstate opposes Plaintiff's Motion.

Plaintiff's Motion requires us to address the interplay between the New Jersey statutory provisions that apply when a Pennsylvania resident is injured in New Jersey, while driving a vehicle insured by a company that does business in both Pennsylvania and New Jersey, and the Pennsylvania statutory provisions that governed the CAT Fund at the time of Barlow's accident.

Prior to Barlow's accident in 1989, the Pennsylvania General Assembly had, in 1984, repealed the No–Fault Motor Vehicle Insurance Act, and adopted the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7. Subchapter F of the MVFRL established a Catastrophic Loss Trust Fund for payment of medical expenses in excess of $100,000 and up to $1,000,000, for Pennsylvania residents who sustained injuries arising out of the use of a motor vehicle, 75 Pa.C.S. §§ 1761–1769 (repealed).

A Pennsylvania resident qualified for fund benefits under Subchapter F if: (1) the injury in the auto accident occurred in the U.S. or Canada; (2) the injury occurred in a vehicle registered with the Pennsylvania Department of Transportation; (3) the registrant paid the annual fee for the Catastrophic Loss Trust Fund; and (4) the applicant incurred medical expenses up to the $100,000 initial threshold. 75 Pa.C.S. §§ 1761–1762 (repealed).

Subchapter F was repealed on December 12, 1988,[2] but the General Assembly passed Act 4 of 1989, 75 Pa.C.S. § 1798.2,

---

1. There is some evidence that, at the time of the accident, Barlow may have been under the influence of alcohol and attempting to flee from police.

2. Subchapter F was repealed because the system, as structured, was severely underfunded and unable to derive sufficient funds from its annual fees and investments to cover claims that had been made. *Bumberger v. Ins. Dep't*, 536 Pa. 169, 177, 638 A.2d 948, 951 (1994). Furthermore, it failed to "make sound fiscal projections of the amount of money that would be needed in the future to cover an uncertain number of claims of undefined amounts." *Id.*

to fill the gap left by this repeal. *See Bumberger v. Insurance Department,* 536 Pa. 169, 638 A.2d 948 (1994). Act 4 included a "savings provision" governing the period from December 12, 1988 through May 31, 1989, providing that:

> all natural persons who suffer or suffered a catastrophic loss prior to June 1, 1989, or who may suffer a loss during the registration year for which payment was made in accordance with former section 1762 (relating to funding), respectively, shall continue to receive, or be eligible to receive, catastrophic loss benefits as if Subchapter F had not been repealed.

75 Pa.C.S. § 1798.2(a).

Thus, at the time of Barlow's accident in 1989, when a Commonwealth resident suffered catastrophic injuries from use of a motor vehicle in Pennsylvania, his or her private insurer paid the first $100,000 in medical expenses. 75 Pa.C.S. §§ 1761–1769 (repealed). Then, the CAT Fund paid *all* medical expenses during the first eighteen months up to a lifetime cap of $1,000,000. *Id.* After eighteen months, if the lifetime cap had not been reached, the CAT Fund paid the first $50,000 in medical expenses per year, and the resident's private insurer was responsible for anything above the CAT Fund's $50,000 annual cap. 75 Pa.C.S. § 1766 (repealed).

Barlow's accident occurred in New Jersey, however, and, at the time of his 1989 accident, New Jersey statutes required:

> Every automobile liability insurance policy insuring an automobile defined in this act ... shall provide personal injury protection [(PIP)] coverage ... for the payment of benefits without regard to negligence, liability or fault, to the named insured ... who sustained bodily injury as a result of an accident while occupying ... or using an automobile.

N.J. Stat. Ann. § 39:6A–4 (PIP Statute). "Personal injury protection coverage" means and includes "[p]ayment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident...." N.J. Stat. Ann. § 39:6A–4. "PIP benefits are designed to cover certain basic expenses incurred in automobile accidents by the occupants of an insured vehicle, the members of each car owner's family, and, in certain instances, pedestrians." *Martin v. Home Ins. Co.,* 141 N.J. 279, 661 A.2d 808, 809 (1995). Such protection was to "be the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own." N.J. Stat. Ann. § 39:6A–4.2 (Primacy Statute). Importantly, New Jersey law required that:

> Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State ... which sells a policy providing automobile or motor vehicle liability coverage, or any similar coverage, *in any other state* ... shall *include in each policy coverage to satisfy at least the ... personal injury protection benefits coverage pursuant to ... [the PIP Statute]* ... whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

N.J. Stat. Ann. § 17:28–1.4 (Deemer Statute) (emphasis added). In other words, "any policy issued by an insurance company qualified to do business in New Jersey covering a vehicle while it is being operated in New Jersey [is] construed as providing the same type of PIP benefits as are required under New Jersey law." *Martin,* 661 A.2d at 809. The Deemer Statute applies to out-of-state residents when: (1) the insured vehicle is used in the state of New Jersey, and (2) the insurer is authorized to do business in New Jersey. *Wil-*

*son v. Transport Ins. Co.,* 889 A.2d 563, 576 (Pa.Super.2005). Because Barlow's accident occurred in New Jersey, in a vehicle insured by Allstate, and Allstate was qualified to transact automobile insurance business in both Pennsylvania and New Jersey, the Deemer Statute required it to provide PIP coverage to Barlow, at least to the extent required by the New Jersey statute.[3]

Between June and July, 1989, Barlow's parents submitted applications for medical benefits to *both* Allstate and the CAT Fund. In September of that year, Allstate notified the CAT Fund that it had already paid $100,000 of Barlow's medical expenses. Thereafter, neither Allstate nor the CAT Fund paid Barlow's medical bills from September 1989 through March 1990. When Barlow's parents contacted Allstate, the insurer told them that the CAT Fund would handle Barlow's medical bills. When they contacted the CAT Fund, they were told that, although Barlow qualified for CAT Fund benefits under Pennsylvania law, the Fund believed that New Jersey automobile insurance law made Allstate *primarily* liable for all of Barlow's medical expenses. The CAT Fund told Barlow's parents that it would pay benefits only if Allstate was no longer able to do so.[4]

Shortly thereafter, the CAT Fund entered into a written contract with Barlow's mother, acting as his legal guardian, pursuant to which the CAT Fund agreed to pay benefits under its guidelines in exchange for Barlow's parents' agreement to file suit against Allstate to require it to pay all medical expenses in accordance with New Jersey automobile insurance law. The CAT Fund paid $361,223.22 for Barlow's medical expenses in the first eighteen months, which expired on December 15, 1990. Beginning in 1991, the CAT Fund paid the first $50,000 of Barlow's medical expenses each year, with Allstate paying expenses greater than that.

Notwithstanding their agreement, the Barlow family never filed suit against Allstate. The CAT Fund decided not to take further action, but to await the outcome of a case it believed similar, which was in litigation before the New Jersey Superior Court, Appellate Division, before proceeding with litigation in its other New Jersey cases. In Plaintiffs' words, "the CAT Fund decided to allow the *DeLeeuw* case to serve as the 'test case' for its understanding and interpretation of the law in this area (specifically the primary obligation of Allstate, under New Jersey automobile insurance law, to pay all reasonable medical expenses)." (Plaintiffs' Br. at 6.)[5]

---

3. The constitutionality of the New Jersey Deemer Statute has been repeatedly upheld under circumstances similar to those presented herein. *See D'Orio v. West Jersey Health Sys.,* 797 F.Supp. 371 (D.N.J.1992); *Adams v. Keystone Ins. Co.,* 264 N.J.Super. 367, 624 A.2d 1008 (App.Div.1993).

4. CAT Fund communications were actually undertaken by its third-party claims administrators: PIMCO (Pennsylvania Insurance Management Company) first filled this role, and then, in 1994, Inservco Insurance Services, Inc. took over these responsibilities for the Fund. (Dep. Lee–Williams, May 5, 2005 at 49–50.)

5. Both Plaintiffs and Allstate cite *DeLeeuw v. Maryland Cas. Co.,* No. A–7221–95T3, an unpublished opinion of the New Jersey Superior Court, Appellate Division, decided August 18, 1997. *DeLeeuw* involved a minor Pennsylvania pedestrian whose parent was insured by a Pennsylvania insurer, who was struck by a car in New Jersey. The tortfeasor was driving a car belonging to his Pennsylvania employer, which was insured by a Pennsylvania insurer. Both insurers did business in both Pennsylvania and New Jersey. The court concluded that the injured pedestrian was eligible for unlimited personal injury protection (PIP) benefits under the New Jersey Deemer Statute, and that the pedestrian's

Based on the outcome in the *DeLeeuw* case, on March 15, 2001, the CAT Fund notified Allstate in writing that it would no longer pay for Barlow's medical expenses, and demanded reimbursement for total expenses incurred to date ($865,995.23). Allstate refused to reimburse the CAT Fund, at which time Plaintiffs commenced this suit.

In their Complaint, filed November 27, 2002, Plaintiffs set forth three claims: (1) Subrogation (Count I); (2) Indemnification (Count II); and (3) Unjust Enrichment (Count III). They requested that this Court award them judgment against Allstate for $865,995.23, plus interest, costs and expenses of suit, including reasonable attorneys' fees, and any other relief this Court deems proper.

Allstate filed an Answer with New Matter and Counterclaims on February 6, 2003, denying the averments made in all counts of the Complaint. In its New Matter, Allstate claimed this action was barred by laches and/or the statute of limitations, and by the doctrine of equitable estoppel. It also claimed that the CAT Fund was an improper plaintiff, and that application of New Jersey's Deemer Statute violated the United States and Pennsylvania Constitutions. Allstate included four Counterclaims: (1) Equitable Subrogation (Count I); (2) Indemnity (Count II); (3) Unjust Enrichment (Count III); and (4) Declaratory Judgment (Count IV). It requested this Court to enter judgment in its favor on Counts 1–3, together with costs, attorneys' fees and such other relief as this Court deems just, including repayment of $134,004.80, which is the difference between what the CAT Fund has already paid and the $1,000,000 lifetime limit. In Count 4, Allstate also requested this Court to enter judgment declaring that primary responsibility for payment of Barlow's medical expenses rests with the CAT Fund to an annual limit of $50,000, and a lifetime limit of $1,000,000.

Plaintiffs responded on February 27, 2003, with a Reply to New Matter and Answer to Counterclaims, essentially denying all averments. Thereafter, the parties engaged in discovery from April 2003 through May 2005. On December 7, 2005, Plaintiffs submitted a Motion for Summary Judgment on the claims set forth in its Complaint and on the counterclaims asserted by Allstate. Allstate has filed a brief in opposition.[6]

A court shall enter summary judgment where there is no genuine issue of material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. Pa. R.C.P. No. 1035.2(1); *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850 (2005). A motion for summary judgment is based on an evidentiary record that entitles the moving party to judgment as a matter of law. Note to Pa. R.C.P. No. 1035.2; *Swords v. Harleysville Ins. Cos.*, 584 Pa. 382, 883 A.2d 562 (2005). A party moving for summary judgment has the burden of proving no genuine issue of material fact exists. *Stonybrook Condo. Ass'n v. Jocelyn Props., Inc.*, 862 A.2d 721 (Pa.Cmwlth.2004), *pet. for allowance of appeal denied*, 583 Pa. 698, 879 A.2d 784 (2005). In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party,

---

Pennsylvania insurer could seek contribution from the tortfeasor's Pennsylvania insurer. The New Jersey Supreme Court denied petitions and cross-petitions for certification on June 2, 1998, 156 N.J. 379, 718 A.2d 1208 (1998).

6. Allstate argues that, before the Court can grant Plaintiff's Motion, there are issues of material fact relating to its affirmative defenses that would need to be resolved.

and doubts as to the existence of a genuine issue of material fact are to be resolved against the moving party. *Id.* A court may grant summary judgment only when the right to such judgment is clear and free from doubt. *Id.*

Preliminarily we note that, while the accident occurred in New Jersey, the coverage issues arise from a contract of insurance entered in Pennsylvania, by a Pennsylvania resident, with an insurance company licensed to do business in Pennsylvania, and was applicable to an automobile registered in Pennsylvania.

The parties agree that where, as here, a Pennsylvania resident is injured in New Jersey and has insurance through a company that also issues insurance policies in New Jersey, the Pennsylvania Superior Court has read the New Jersey Deemer Statute as forming an "implied endorsement to a Pennsylvania policy." *Wilson,* 889 A.2d at 572 (citing *Smith v. Firemens Ins. Co.,* 404 Pa.Super. 93, 590 A.2d 24 (1991), *pet. for allowance of appeal denied,* 529 Pa. 669, 605 A.2d 334 (1992)); *see also, DiOrio v. Nationwide Mut. Ins. Co.,* 17 F.3d 657, 660 (3d Cir.1994) (noting that Pennsylvania courts have read the Deemer Statute as being "attached" to the Pennsylvania insurance policy in the nature of an endorsement applicable to an accident which occurred in New Jersey); *Prudential Prop. and Cas. Ins. Co. v. Liberty Mut. Ins. Co.,* 896 F.Supp. 400, 402 n. 4 (E.D.Pa.1994) (noting that Pennsylvania courts have recognized when an accident occurs in New Jersey, that state's Deemer Statute has been read "as if it were part of the [Pennsylvania] insurance contract").

■ In doing so, the Superior Court has noted that, under the principle of "comity," "courts of one state or jurisdiction will give effect to laws and judicial decisions of another state out of deference and mutual respect, rather than out of duty...." *Smith,* 590 A.2d at 27. The Superior Court reasoned that the Deemer Statute "contradicts no public policy of Pennsylvania, and in fact, furthers Pennsylvania's policy that insureds receive coverage for their basic losses" *Id.*[7] We agree with the reasoning employed by the Superior Court in *Wilson* and its predecessor cases, and apply it here. Accordingly, we conclude that, under principles of comity, since, in this case, a Pennsylvania resident was injured in a motor vehicle accident in New Jersey, while driving a vehicle insured by a company that does business in both Pennsylvania and New Jersey, the Deemer Statute is an implied endorsement to the insurance contract.

The parties agree that this Court must interpret the relevant New Jersey statutory provisions. The Pennsylvania Superior Court has turned to New Jersey case law to help define the terms in the New Jersey statutory provisions in the implied endorsement. *Wilson.* We agree with the parties, and with the Superior Court, that turning to New Jersey precedent to help define the terms is necessary and appropriate.

■ Plaintiffs' argument focuses on both the New Jersey Primacy Statute, which provides that benefits paid under its PIP Statute are to be *"primary"* for payment of medical expenses for the named insured *and* any resident relative, N.J. Stat. Ann. § 39:6A–4.2, and former Section 1766(c) of the MVFRL, which defines

---

7. The Superior Court also noted that doing so furthers New Jersey's interests in establishing laws for its own insurance companies, assuring that New Jersey insurance companies abide by those laws, and assuring that individuals injured on New Jersey highways are provided with insurance to cover their medical expenses. *Id.* at 27–28.

when CAT Fund benefits are to be "primary". Section 1766(c), provides:

*[E]xcept for workers' compensation,* catastrophic loss benefits paid or payable by the fund shall be *primary* to any other available source of accident or health benefits including any program, group contract or other private or public source of benefits unless the law authorizing those benefits makes the benefits primary to the benefits provided under this subchapter.

75 Pa.C.S. § 1766(c) (repealed) (emphasis added.) Plaintiffs interpret Section 1766(c) to mean that CAT Fund benefits were not intended to be the primary source of payment for medical expenses when another law also offering benefits designates those benefits as the primary coverage. Therefore, because the New Jersey Primacy Statute defines Allstate as the "primary" carrier, and, under the Pennsylvania MVFRL, where another carrier is "primary," the CAT Fund's coverage is only secondary, Plaintiffs argue that Allstate, as the primary carrier, should be responsible for all of Barlow's medical expenses. Allstate, however, points out that the term "primary" has a different meaning in the Pennsylvania MVFRL than it does in the New Jersey Primacy Statute.

Under the Pennsylvania MVFRL, the term "primary" refers to coverage that must first be paid until it is exhausted, at which time the next insurer begins coverage. *See* 75 Pa.C.S. § 1719(a) of the MVFRL. This section, entitled "Coordination of benefits" provides:

(a) General Rule.—Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits ... shall be construed to contain a provision that all benefits provided therein shall be *in excess of and not in duplication of any valid and collectible first party benefits ....*

(Emphasis added.)

New Jersey law, on the other hand, defines "primary" as used in the Primacy Statute as "a source for the *immediate* payment of PIP benefits, thereby insulating covered persons from delays caused by squabbles between insurers." *U.S. Fid. & Guar. Co. v. Indus. Indem.,* 264 N.J.Super. 379, 624 A.2d 1014, 1017 (App.Div.1993) (*USF & G*). This section of the statute was explained in *Cokenakes v. Ohio Cas. Ins. Co.* as follows:

In the final analysis, [N.J.S.A.] § [39:6A–]4.2 *merely designates the carrier first required to pay PIP benefits, preserving its right of contribution from other insurers also liable for such payments.* The Legislature thus provided a remedy for persons injured in automobile accidents when multiple insurers are unable to agree as to the PIP contributions to be made by each. [N.J.S.A.] § [39:6A–]4.2 promotes a primary intent of the No–Fault Law: the prompt payment of PIP benefits. Victims of automobile accidents no longer need wait for multiple insurers to resolve their differences before these important benefits become payable.

208 N.J.Super. 308, 505 A.2d 243, 246 (Law Div.1985) (emphasis added). Thus, under the Primacy Statute, the "primary" carrier is the one designated to pay the PIP benefits to the insured, but that does not extinguish the obligation of the other liable insurers from whom it may seek contribution. *USF & G*, 624 A.2d at 1016. The purpose of this section is to promote prompt payment of PIP benefits by identifying a definitive source when multiple insurers are unable to agree over payment responsibilities, *id.* at 1017, and does not

eliminate the responsibility of other insurers to ultimately pay their share.[8]

Therefore, although under the New Jersey statutory provisions Allstate would be the "primary" insurer, this means only that it is the company designated to *first* pay PIP benefits to Barlow. Thus, the Primacy Statute identifies the entity that must initially pay the bills, but does not define which entity ultimately bears responsibility for payment. Similarly, reading this New Jersey statutory language into the Pennsylvania contract does not assign ultimate responsibility for payment of an insured's medical expenses, but only promotes the quick identification of the entity *first called upon* to pay the victim's medical bills in order to ensure that medical expenses *are* paid. *See USF & G*, 624 A.2d at 1017; *Cokenakes*, 505 A.2d at 246. Ultimately, however, and contrary to Plaintiffs' interpretation, this does not extinguish Plaintiffs' responsibility for the statutory coverage they are to provide under Pennsylvania law.

Plaintiffs argue that the CAT Fund is not an insurer, *see* Plaintiffs' Reply to Defendant's Opposition to Motion for Summary Judgment at 1–2, and, so, should not be responsible to provide coverage. They cite *Pa. Med. Soc' y Liab. Ins. Co. v. Prof'l Liab. Catastrophe Loss Fund*, 804 A.2d 1267, 1271 (Pa.Cmwlth.2002), *inter alia*, for the proposition that Pennsylvania appellate courts have "held that the CAT Fund and its sister funds are, as a matter of law, *not* insurance companies but instead 'statutorily-created executive agenc[ies] designed only to provide the coverage[s] enumerate[d] in the[ir] Act[s].' " (Plaintiffs' Reply to Defendant's Opposition to Motion for Summary Judgment at 1–2.) However, the New Jersey Primacy Statute states that "the [PIP] coverage of the named insured shall be the primary *coverage* for the named insured and any resident relative," and does not specifically require providers of those PIP benefits to be insurers. Furthermore, the cases we have cited for clarification regarding the application of New Jersey's Primacy Statute do not dictate a different result. Factually, they involved disputes between two or more insurance companies, and so discussed the Primacy Statute in terms of "insurers". Although they did not specifically discuss the PIP coverage provided by a statutory fund, the discussion and rationale would apply as well to *any* entity providing PIP coverage.[9]

Because the New Jersey Primacy Statute does not extinguish the CAT Fund's payment obligations under the Pennsylvania MVFRL, Plaintiffs have not shown that, as a matter of law, they are entitled to reimbursement from Allstate for the payments they have made. We, therefore, do not grant their Motion for Summary Judgment.[10] Accordingly, Plaintiffs' Motion for Summary Judgment is denied.

---

**8.** We note that the court's opinion in *DeLeeuw* is not contrary to this analysis. In *DeLeeuw*, the New Jersey Superior Court, Appellate Division, held that the Deemer Statute did *not* make the pedestrian's insurer the *only* source of PIP benefits, or "preclude the possibility that two or more insurers may be considered primary or first-party insurers." Relying on *U.S. Fidelity & Guar. Co. v. Indus. Indem.*, 264 N.J.Super. 379, 624 A.2d 1014 (App.Div.1993) (*USF & G*), the court specifically noted that the term "primary" in the Deemer Statute was meant to identify who paid first, and not which party might be ultimately liable for all insurance payments, and permitted the pedestrian's insurer to seek contribution from the tortfeasor's insurance company. The *DeLeeuw* court did not discuss the CAT fund in its opinion.

**9.** Moreover, interpreting the statute as narrowly as Plaintiffs request would cause it to conflict with the Pennsylvania insurance plan created by the MVFRL.

**10.** Because of our disposition on this issue, we do not reach Plaintiffs' other issues.

# 9

## ORDER

**NOW,** March 29, 2006, Plaintiffs' Motion for Summary Judgment is hereby DE-NIED.

Judge SMITH–RIBNER concurs in the result only.